## THE QUEEN ELIZABETH.

(District Court, N. D. California, First Division. December 11, 1913.)

No. 15,342.

SHIPPING (§ 84*)—INJURIES TO STEVEDORE—LIABILITY OF VESSEL.

While a vessel chartered to a fuel company was being unloaded by its employés, libelant was directed with others to climb the cargo battens in order to dislodge coal that had settled behind them, and when he was 12 or 15 feet from the bottom of the hold, one of the battens supporting him gave way because of a broken cleat, and he fell to the bottom, sustaining serious injuries. The battens were not intended to be used as a ladder, but were to prevent the cargo from touching the sides of the vessel, and there was no evidence that the owner or master of the vessel knew that they were customarily used by stevedores in cleaning out the so-called pigeon holes. There was proof that this duty was generally performed by the crew while standing on the coal as it was being taken out. *Held* that the ship was not liable for the negligence of the fuel company, if any, in directing its men to use the battens as ladders without first ascertaining that it was safe to do so.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

In Admiralty. Libel by John Downey against the British steamship Queen Elizabeth. Dismissed.

Denman & Arnold, of San Francisco, Cal., for libelant.

Ira A. Campbell and McCutchen, Olney & Willard, all of San Francisco, Cal., for respondent.

DOOLING, District Judge. Libelant was injured while in the employ of the Western Fuel Company discharging a cargo of coal from the steamer Queen Elizabeth. The vessel was under charter to the Western Fuel Company, which had full charge of her for all the purposes attending the discharge of her cargo. The libelant was, with others, directed by the foreman to climb the cargo battens in order to dislodge the coal that had settled behind them. When 12 or 15 feet from the bottom of the hold one of the battens supporting him gave way because of a broken cleat, and he fell to the bottom, receiving serious injuries. He brought this action against the vessel, and in the state court brought another action against the Western Fuel Company to recover damages for the same injuries. This latter action resulted in a compromise by which he was paid $1,250; and it is urged that this payment precludes him from recovering here. It is quite possible that under all the facts elicited at the trial concerning libelant's settlement with the Western Fuel Company such settlement may be a bar to his recovery here, but it does not seem to me at all necessary to determine this question, as I am of the opinion that if there were any liability, the Western Fuel Company was solely liable. It is sought to fix a liability, on the ship, upon the well-known principle that an employer is bound to furnish his employé with a reasonably safe place in which to work. That principle is not questioned. Even when, as here, the employé is not working for the ship, if the ship does supply the place in which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the work is to be performed, such place must be reasonably safe, or the ship will be liable for any resulting injury. But these cargo battens are not intended to be used as ladders. Their function is to prevent the cargo from touching the sides of the vessel, and while there is some evidence tending to show that such battens are customarily used at this port as ladders to support the stevedores in cleaning out the so-called pigeon holes, there is no evidence tending to show that either the owner or the master of this vessel had knowledge of any such custom. On the contrary, it appears that these pigeon holes are frequently, if not ordinarily, cleaned by the crew of the vessel instead of by the stevedores, and that in the discharge of this very cargo of coal the crew of the vessel had been cleaning the pigeon holes up to the day of the accident, and had done so by standing on the coal, which is shown to have been the method customarily followed on this vessel. The day of the accident being Sunday, the crew did not work, the evidence showing that the crew of a British vessel does not work on Sunday while in port. No request was made of the master to put his crew to work cleaning out the pigeon holes on this day, nor was any request made, by the stevedore in charge of the unloading, that the ship furnish either a ladder or staging to enable his men to reach the pigeon holes. These could have been cleaned by the stevedores by standing on top of the coal as it was being taken out, but this method would have consumed more time. As these battens were not used by the ship's crew as ladders, as they were not placed there to be used as such, and as it does not appear that either the owner or master had any reason to believe that they would be used as such, I am of the opinion that the ship cannot be held responsible because the Western Fuel Company directed its men to use them without first ascertaining that they could do so with safety. If there were any negligence, it was on the part of the fuel company in failing to ascertain the condition of the battens before directing its employés to climb them.

The libel will therefore be dismissed.