**CHRISTIANSEN v. UNITED STATES et al.**

No. 1415, In Admiralty.

United States District Court
D. Massachusetts.
Jan. 8, 1951.

———◆———

Harry Kisloff, Boston, Mass., for libellant.

William T. McCarthy, U. S. Atty., and Edward O. Gourdin, Asst. U. S. Atty., Thomas H. Walsh, Kenneth C. Parker and Parker, Coulter, Daley & White, all of Boston, Mass., for third party defendants Edmund D. and William F. Burke.

SWEENEY, Chief Judge.

In this action the libellant seeks to recover for injuries sustained through the alleged negligence of the defendant in improperly fastening a sweat board to the wall of a tank aboard the SS Gauntlet. The defendant has impleaded the third party defendants, Edmund D. Burke and William F. Burke, doing business under the name and style of Burke Bros., a co-partnership, which employed the libellant at the time of the injury.

## Findings of Fact

On May 27, 1946, the SS Gauntlet was tied up in Boston Harbor. The ship's owners or agents had contracted with the third party defendant, Burke Bros., to clean the vessel, providing their own equipment and men. They were independent contractors.

On its last voyage there had been stored in the tank in Hold #2 of the SS Gauntlet a dry cargo, and temporary sweat boards had been erected so as to protect the cargo from moisture on the sides of the tank. In cleaning out this tank, the libellant with one or two others started to remove the loose paper which had collected behind the sweat boards, starting at the bottom and working upwards. As he described it, he held onto one sweat board with his left hand and pulled the paper out with his right, or vice versa. Each sweat board was about 6 to 8 feet long, 4 to 7 inches wide, and about 1 inch thick. As the libellant proceeded upward removing the paper and debris from behind the boards, he used the sweat boards as a ladder. The libellant testified that this was the customary way of cleaning a tank. These sweat boards in the tank were only slightly different from the batten boards which lined the skin of the ship, the main difference being that the batten boards were held in place by permanent fixtures welded to the side of the ship, whereas the sweat boards in the tank were nailed to uprights which were wedged in to the side of the tank. It would have been much safer for the cleaners to have used ladders of varying lengths in doing this work. The third party defendant tried to explain this away by saying that it would need too many ladders, and that it was considered safe to use the temporary side structures.

The libellant had gone to the top of the section and was coming down when, placing his left hand upon one of the sweat boards, the board pulled out of the temporary wall and he fell about 15 feet, landing on his feet. He was taken to the hospital where it was ascertained that he had a fractured tibia, and both heels were fractured. He remained at the hospital until about June 15, 1946, and then received medical treatment for about a year from his doctor. He has received workman's compensation from the insurer of the third party defendant in the sum of $25.00 a week for about one year and five months. I find that at the time of the libellant's injury he was paid by the third party defendant at the rate of 95¢ per hour, and that he averaged about $33.00 a week. The bills for medical care and hospitalization were not put in evidence, and I assume that they have been paid by the insurer of the third party defendant. The libellant made a good recovery from his injuries but still has about a 15% permanent limitation of motion in both feet.

Counsel for the libellant cites Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, in support of his position. Undoubtedly a ship's owner owes as much of an obligation of seaworthiness to a cleaner as is owed to a stevedore. In that case, the Court allowed recovery by a stevedore who was helping to load a vessel because of an unseaworthy condition aboard the boat. A shackle supporting the boom broke causing the boom and tackle to fall and injure the respondent. It was held that this equipment was defective and that the obligation of seaworthiness had been breached. In the instant case I do not think that there was an element of unseaworthiness present. The owner of the vessel had hired the libellant's employer to clean the vessel preparatory to taking on another cargo. The tank in which the injury occurred was one which could be used for liquids or grains or, when equipped with sweat boards, for dry cargo. Whether or not it was part of the duty of the clean-

936

ers to remove the sweat boards did not appear in evidence. It should have been apparent to anyone that the sweat boards were put there for the purpose of protecting cargo and not to be used as a ladder. Certainly the proximate cause of the injury was the failure of the third party defendant to provide ladders or platforms from which the men might work. Whether the libellant's employer encouraged the workmen to take an obvious and unnecessary risk need not be decided here as the remedy against the third party employer is exclusively under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

The libellant offered some evidence that it was a custom for boat cleaners to use the batten boards on the side of a ship as a ladder and to use the sweat boards in the tank for the same purpose, but such a practice has been condemned in The Queen Elizabeth, D.C., 209 F. 712. If it could be found that it was a custom among the cleaners so to use sweat boards, I still could not find that this custom had been brought to the attention of the boat owner so that it might have taken further precautions. From all of the evidence submitted I find that there was neither neglect on the part of the boat owner or his employees nor unseaworthiness when understood as liability without fault. The sweat board made of dunnage was put there for but one purpose—the protection of cargo—and was never intended to be used as a ladder. Recovery in this case is not being denied on any theory of assumption of the risk. It is directed to the proposition that an instrumentality properly used aboard the vessel for one purpose cannot be changed into a dangerous instrumentality by reason of the adoption of a custom of carelessness and neglect on the part of those who use the instrumentality. There is no unseaworthiness in this case.

## Conclusions of Law

From the foregoing I conclude and rule that the SS Gauntlet was not unseaworthy and that this libellant cannot recover in this action.

I also conclude and rule that he cannot recover against the third party defendant in this action as his rights against the employer are covered exclusively by the compensation benefits provided by the Longshoremen's and Harbor Workers' Compensation Act.