**CHRISTIANSEN v. UNITED STATES et al.**

No. 4587.

United States Court of Appeals
First Circuit.

Nov. 14, 1951.

Arnold W. Parker, Somerville, Mass. (Harry Kisloff, Boston, Mass., on brief), for appellant.

Thomas H. Walsh, Boston, Mass. (George F. Garrity, U. S. Atty., Edward O. Gourdin, Asst. U. S. Atty., and Leo F. Glynn, all of Boston, Mass., on brief), for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a final decree entered by the United States District Court for the District of Massachusetts on January 9, 1951, dismissing a libel against the respondent, United States of America.

The libel was brought under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. to recover damages for injuries sustained by the libellant in falling from the battens when a batten board gave way while he was performing his duties as a ship's cleaner in tank #2 aboard the SS Gauntlet owned and operated by the United States of America.

The opinion of the district court, 94 F. Supp. 934 adequately covers the facts and it is needless to repeat them here.

The libellant states in his brief that he relies on the following points:

"1. That the court erred in its findings of fact as to the custom of climbing sweatboards, as to the safeness of climbing sweatboards and as to the knowledge of the ship owners in regard to the climbing of sweatboards.

"2. The court erred in its application of the legal standards of duty owed to the libellant, in failing to find that the obligation of seaworthiness was breached."

It is apparent that the trial court was not impressed by the evidence as to any custom of climbing the sweat boards here. The court stated in its opinion 94 F.Supp. at page 936, supra:

"The libellant offered some evidence that it was a custom for boat cleaners to use the batten boards on the side of a ship as a ladder and to use the sweat boards in the tank for the same purpose, but such a practice has been condemned in The Queen Elizabeth, D.C., 209 F. 712. If it could be found that it was a custom among the cleaners so to use sweat boards, I still could not find that this custom had been brought to the attention of the boat owner so that it might have taken further precautions. * * *"

In The Parthian, C.C., D.Mass.1891, 48 F. 564, the court said: "It is the established rule of this court that it will not reverse the conclusion reached by the district court upon a controverted question of fact, where the evidence is contradictory, unless it clearly appears to be contrary to the preponderance of evidence." See The Josephine & Mary, 1 Cir., 120 F.2d 459 and Gibbons v. United States, 1 Cir., 186 F.2d 488.

If any custom were established by the evidence it might have been the custom of the cleaner's use of permanent regulation sweat boards in a hold attached to the side of the ship by brackets. To establish that there was a custom of climbing permanent sweat boards in a hold is quite different than the proposition that there was also a custom of climbing temporary sweat boards made of dunnage in a tank.

The necessity for using these temporary sweat boards as a ladder in the cleaning of a tank was also questioned by the court both at the trial and in its opinion. The libellant stressed that climbing on the temporary sweat boards was necessary because of the curvature of the ship. He maintains that this physical situation, together with a slippery floor, precluded the use of ladders. Yet it was quite definitely established that the bulkhead upon which the libellant was working was "straight up and down." In the record the description of the place where the accident occurred is not too clear but we cannot say that the court's understanding of the situation was wrong or that its conclusion was erroneous where it stated in its opinion, supra, 94 F.Supp. at pages 935, 936: "* * * It would have been much safer for the cleaners to have used ladders of varying lengths in doing this work. * * *

* * * * * *

"* * * Certainly the proximate cause of the injury was the failure of the third party defendant to provide ladders or platforms from which the men might work."

We do not regard as erroneous the court's finding that the alleged custom of climbing temporary sweat boards had not been brought to the attention of the boat owner so that it might have taken further precautions. The libellant had been working in the tank only about 20 minutes before the accident occurred and there is no direct evidence that any of the ship's officers saw the libellant or his fellow workers using the temporary sweat boards as a ladder in cleaning the tank. The record does not contain clear and convincing evidence that the ship's owner or officers knew or should have known that the cleaners were using the temporary sweat boards here.

The two cases chiefly relied upon by the libellant are distinguishable from the facts here and we find no error in the court's application of the legal standards of duty owed to the libellant in failing to find that the obligation of seaworthiness was breached. In Thibeault v. Boston Towboat Co., D.C., 28 F.Supp. 152, aff'd

sub nom. Mystic Terminal Co. v. Thibeault, 1 Cir., 108 F.2d 813, there was found to be a "long standing usage" "acquiesced in" by the respondent with regard to the use of the roof of the carfloat as a platform. Convincing evidence as to such a usage, regarding temporary sweat boards being used as a ladder, is lacking here. In Lopez v. American President Lines, Ltd., 2 Cir., 138 F.2d 914, a jury case, there was evidence of a custom or usage for at least two days. There the court said: "* * * if the practice had been going on for so long a time, a jury was clearly justified in finding the defendant chargeable with notice of it and with the duty to provide against it." Here the libellant was cleaning a tank and was using temporary sweat boards. He had been working in this way only about 20 minutes when the accident happened. The trial court's conclusion on the facts of this case as to lack of knowledge on the owner's part is equally as valid as the jury's conclusion on the same issue in the Lopez case.

The final decree of the district court is affirmed.