**UNION CARBIDE CORPORATION, a corporation, Defendant and Third Party Plaintiff below, Appellant and Cross-Appellee,**

v.

**Ellen GOETT, As Administratrix of the Estate of Marvin Paul Goett, deceased, Plaintiff below, Appellee and Cross-Appellant,**

**and**

**Amherst Barge Company, a corporation, Third Party Defendant below, Appellee.**

No. 7588.

United States Court of Appeals Fourth Circuit.

Argued April 9, 1958.

Decided May 27, 1958.

Charles M. Love, Charleston, W. Va. (Dayton, Campbell & Love, and Charles R. McElwee, Charleston, W. Va., on the brief) for Union Carbide Corporation, appellant and cross-appellee.

Harvey Goldstein, New York City (E. Franklin Pauley, Charleston, W. Va., and S. Eldridge Sampliner, Cleveland, Ohio, on the brief) for Ellen Goett, as administratrix, etc., appellee and cross-appellant.

David D. Johnson, Charleston, W. Va., (Jackson, Kelly, Holt & O'Farrell, and W. T. O'Farrell, Charleston, W. Va., on the brief) for Amherst Barge Company, appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and THOMSEN, District Judge.

THOMSEN, District Judge.

Marvin Paul Goett, an employee of Amherst Barge Company, while sandblasting a tank barge owned by Union Carbide & Carbon Corporation, fell into

the Kanawha River and was drowned. The barge had been turned over to Amherst for repairs and improvements and was under its sole control. Since the barge was an unmanned barge, it had no life rings or other rescue equipment. The principal question to be decided on this appeal is whether Carbide is liable to Goett's administratrix either for negligence or unseaworthiness because the barge was not so equipped.

Carbide was the owner of the CC–204, an unmanned steel tank barge, with a flat deck. Except for pipe lines it had no superstructure of any kind, but there were kevels along the outer edges of the deck to assist in mooring. It had no railing around its deck and was not equipped with any life rings or similar rescue equipment. Applicable Coast Guard regulations do not require that such barges be equipped with railings or life buoys [1], and it is not customary for such barges to be so equipped. The barge and its equipment had been inspected, certified and approved by the Coast Guard; the certificate of inspection issued on April 1, 1955, granted permission for navigation as an unmanned tank barge on rivers and inland waters tributary to the Gulf of Mexico, approved for use without equipment other than fire extinguishers.

Amherst owns and operates a repair dock, with marine ways on the Kanawha River at Reed, West Virginia. In October, 1955, Carbide contracted with Amherst for a biennial drydocking, certain welding, repairs and improvements to the barge, including installation of twenty-four Butterworth hatches and painting, not only of the deck and boot topping but also of the bottom and sides, with preparation for the painting by means of sandblasting. The work was to be done in accordance with Carbide's written specifications. A large portion of the painting had to be performed in drydock, but the details of the work were at the discretion of Amherst, which had exclusive control of the barge during the performance of the contract, subject only to the specifications.

In contemplation of such repairs, the barge was delivered to Amherst's dock at Reed, West Virginia, on October 2. Carbide's supervisor of barge maintenance went on board the barge on the following day with Amherst's maintenance superintendent, to point out and discuss the work that was to be done.

No officer, crewman, watchman or other person employed by Carbide was left on or with the barge after it was delivered to Amherst; it was in the exclusive care, custody and control of Amherst on October 5, when Goett was drowned. The barge was then afloat on the Kanawha River, lying along shore, near Amherst's marine ways; it was moored to and against the head of a digger boat, which lay downstream from the barge. The digger boat was attached to the shore by a semi-permanent ramp, which was the means of access to the barge from the shore. A ring-type life buoy with a line attached was mounted on the digger boat.

Goett, an employee of Amherst, while sandblasting the deck surface of the barge, fell into the Kanawha River and was drowned. He had been on the barge on October 4 to move the sandblasting equipment aboard, and began work in the morning of October 5. The sandblasting equipment consisted of a heavy machine sitting on the deck of the barge, but movable from place to place, with two hoses leading from the machine. Goett was holding the nozzle of one of the hoses in his hands, and was directing the sandblast against the surface of the deck while he walked slowly across it. He was wearing a canvas hood over his head and shoulders to protect him against flying sand from the sandblaster and was also wearing a respirator. He was not wearing a life jacket, although life jackets were available in Amherst's supply house to any employee who desired to wear one

---

1.  14 U.S.C.A. § 63, now 14 U.S.C.A. § 88; 46 C.F.R. 31.15–5, 32.01–10, 33.40–5 (now 33.40–10).

while at work. The great majority of Amherst's employees preferred not to wear life jackets, and they were not required to do so. When last seen on the barge, Goett was walking slowly backward towards a kevel at the outboard edge of the barge. A minute later Goett's fellow workmen on the barge heard the noise of the nozzle thrashing against the side, ran to the edge of the barge and looked over. Goett was in the river, just outboard of the position in which he was last seen on the barge. Three men immediately went into the river to save him, but Goett fought them off and prevented them from keeping a grip on him. After several minutes he slipped beneath the surface and was drowned. About that time, Amherst's maintenance superintendent arrived on the scene and threw a life buoy off the digger boat into the water, but it was too late.

Goett's administratrix filed a civil action against Carbide in the Southern District of West Virginia based upon the West Virginia Wrongful Death Statute[2], alleging that Goett's death was due to the failure of Carbide to have rescue equipment aboard the barge. Carbide brought in Amherst as a third party defendant, alleging that by express and implied contract, it was entitled to indemnity. Answers were filed by Carbide and by Amherst, denying liability and raising the defenses of contributory negligence and assumption of risk. On plaintiff's motion, over the objection of Carbide and Amherst, the case was transferred to the admiralty side of the court.

The district judge found as facts: that Carbide should have foreseen that many of Amherst's employees would work on the barge; that under these circumstances it was negligence for Carbide not to

2. W.Va.Code, 1955: "§ 5474. [5] Action for Wrongful Death.—Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter. No action, however, shall be maintained by the personal representative of one who, not an infant, after injury, has compromised for such injury and accepted satisfaction therefor previous to his death. * * *"

"§ 5475. [6] Party Plaintiff in Such Action; Damages; Distribution; Limitation.—Every such action shall be brought by and in the name of the personal representative of such deceased person, and the amount recovered in every such action shall be distributed to the parties and in the proportion provided by law in relation to the distribution of personal estate, left by persons dying intestate. In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars: Provided, however, if the plaintiff in such action shall prove by a preponderance of the evidence financial or pecuniary loss sustained by a distributee or distributees of such deceased person in an amount exceeding the sum of ten thousand dollars the jury may give such damages as shall equal such financial or pecuniary loss, not exceeding twenty thousand dollars as the total of all damages recoverable in such action, and the amount so recovered shall not be subject to any debts or liabilities of the deceased. Every such action shall be commenced within two years after the death of such deceased person."

"§ 5477. [8] When Action Not to Abate; Survival of Action for Personal Injury against Wrongdoer; Time within Such Action Must Be Brought.—Where an action is brought by a person injured for damage caused by the wrongful act, neglect or default of any person or corporation, and the person injured dies pending the action, the action shall not abate by reason of his death but, his death being suggested, it may be revived in the name of his personal representative, and the declaration and other pleadings shall be amended so as to conform to an action under sections five and six * * * of this article, and the case proceeded with as if the action had been brought under said sections. But in such case there shall be but one recovery for the same injury. * * *"

equip the barge with safety and rescue equipment; that the barge was not seaworthy at the time Goett was drowned for all the circumstances in which it was being used; that failure to provide rescue equipment was the proximate cause of Goett's death; and that Amherst had exclusive custody, care and control of the barge at the time Goett fell therefrom.

The judge concluded: "this case is not one for the applicability of the doctrine of liability without fault. I think this is a negligence case and that negligence has been shown \* \* \*"; that it was the duty of Carbide to furnish workmen who worked on the barge a safe place to work, and to that end to provide safety equipment, such as life lines or stanchions, to prevent their falling off the unprotected deck; that it was also the duty of Carbide to provide reasonably suitable rescue equipment, and to place such equipment in a position on the barge where it would be immediately available in case of need; that Goett was not guilty of any negligence contributing to his death; that Goett did not assume the risk of the failure of Carbide to have rescue equipment available; that plaintiff is entitled to recover $20,-000 against Carbide, but that if the limitation in the West Virginia Wrongful Death Act did not apply, plaintiff would have been entitled to recover $50,000; and that Carbide is not entitled to indemnity from Amherst.

▪ The maritime law does not allow recovery for wrongful death. The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358. In 1920 Congress adopted an act to provide a remedy for wrongful death on the high seas, 46 U.S.C.A. § 761 et seq., but there is no similar act where the death occurs on inland waters, unless the claim is against the employer of a deceased seaman and therefore covered by the Jones Act, 46 U.S.C.A. § 688. The Supreme Court has held, however, that "where death upon such waters follows from a maritime tort committed on navigable waters within a state whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel in personam for the damages sustained by those to whom such right is given." Western Fuel Co. v. Garcia, 257 U.S. 233, 242, 42 S.Ct. 89, 90, 66 L.Ed. 210; Levinson v. Deupree, 345 U.S. 648, 650, 73 S.Ct. 914, 97 L.Ed. 1319. The West Virginia Wrongful Death Act, like other statutes patterned on Lord Campbell's Act, has created a new cause of action for the benefit of certain named beneficiaries, and has not perpetuated the cause of action which the deceased had before his death. Dunsmore v. Hartman, 140 W. Va. 357, 84 S.E.2d 137; Gulf, C & S, F. T. Co. v. McGinnis, 228 U.S. 173, 33 S. Ct. 426, 57 L.Ed. 785; Continental Casualty Co. v. The Benny Skou, 4 Cir., 200 F.2d 246, 248, certiorari denied 345 U.S. 992, 73 S.Ct. 1129, 97 L.Ed. 1400.

▪ The right to maintain such a suit can be enforced in admiralty only in accordance with the substantive law of the state whose statute is being adopted. The endowment must be taken *cum onere*. The Harrisburg; Levinson v. Deupree; Continental Casualty Co. v. The Benny Skou; Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239, 245, 63 S.Ct. 246, 87 L.Ed. 239; Curtis v. A. Garcia y Cia, 3 Cir., 241 F.2d 30, 35. It has been generally held that any limitations in the state statute as to when suit must be brought, or the amount and character of damages which may be allowed, are binding on the admiralty court. See e. g. Western Fuel Co. v. Garcia; Continental Casualty Co. v. The Benny Skou; Quinette v. Bisso, 5 Cir., 136 F. 825, certiorari denied 199 U.S. 606, 26 S.Ct. 746, 50 L. Ed. 330. A cause of action for damages accrued prior to a decedent's death, whether based on unseaworthiness or on negligence, will survive if the applicable state statute so provides. Kernan v. American Dredging Co., 355 U.S. 426, at page 430, note 4, 78 S.Ct. 394, 2 L.Ed.2d 382; Curtis v. A. Garcia y Cia; Holland v. Steag, Inc., D.C.Mass., 143 F.Supp. 203; Meade v. Luksefjell, D.C.S.D.N.Y., 148 F.Supp. 708. Cf. Cox v. Roth, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260;

Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903. Unlike statutes in some states, the pertinent West Virginia statute permits such survival only if an action has been commenced before the decedent's death, and requires that such action be conformed to an action for wrongful death. W.Va.Code, 1955, § 5477. [8]; Railing v. Case, D.C.N.D. W.Va., 131 F.Supp. 754; Alloy v. Hennis Freight Lines, 139 W.Va. 480, 80 S.E. 2d 514. Of course, no such action was filed by Goett.

In the instant case liability for Goett's death is claimed on the basis both of unseaworthiness and of negligence.

A. There is a division of opinion whether a suit under a statute like the West Virginia Wrongful Death Act can be based on unseaworthiness. Cf. Lee v. Pure Oil, 6 Cir., 218 F.2d 711, 714, and Graham v. A. Lusi, Ltd., 5 Cir., 206 F. 2d 223, with Halecki v. United New York, 2 Cir., 251 F.2d 708, and Skovgaard v. The M/V Tungus, 3 Cir., 252 F.2d 14, noting the strong dissents in both Halecki and Skovgaard. See also Kernan v. American Dredging Co. .

■ It is not necessary for us to decide whether a suit in admiralty under the West Virginia Act can ever be based upon unseaworthiness, because Goett was not a person to whom the warranty of seaworthiness ran, and because we do not agree with the finding of the district judge that the barge was unseaworthy.

The right to sue for injuries caused by unseaworthiness, which seamen have had since The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, was extended to stevedores in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 99, 66 S.Ct. 872, 880, 90 L.Ed. 1099, because they were "doing a seaman's work and incurring a seaman's hazards", and to carpenters in Pope & Talbot v. Hawn, 346 U.S. 400, 413, 74 S.Ct. 202, 207, 98 L.Ed. 143, because: "The ship on which Hawn was hurt was being loaded when the grain loading equipment developed a slight defect. Hawn was put to work on it so that the loading could go on at once. There he was hurt. His need for protection from unseaworthiness was neither more nor less than that of the stevedores then working with him on the ship or of seamen who had been or were about to go on a voyage. All were subjected to the same danger. All were entitled to like treatment under law." See also Alaska S. S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, and Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120. We extended the right to a watchman, supplied by an independent contractor, who was doing work customarily done by an officer or member of the crew. Ross v. The Zeeland, 4 Cir., 240 F.2d 820.

Since the decision below, however, this court has adopted the opinion of Judge Chesnut in Raidy v. United States, D.C.Md., 153 F.Supp. 777, affirmed 4 Cir., 252 F.2d 117, wherein he noted that the admiralty .doctrine of unseaworthiness sprang from a consideration of the particular hazards affecting the crew of a ship in navigation. Raidy was a shipyard worker who was performing duties not within the competence or the customary activities of the crew. The ship was in drydock for structural changes; she was not subject to any of the perils of navigation. The crew had been discharged. The owner maintained no control over the work being done by the independent contractor other than the right to inspect to determine whether the structural changes were being performed in accordance with the specifications. We concluded that Raidy's status was very different from that of a seaman and that it was a "misnomer" to speak of the removable and absent footplate through which he fell as "unseaworthiness of the ship." 252 F.2d at page 118. See also Berryhill v. Pacific, 9 Cir., 238 F.2d 385, certiorari denied 354 U.S. 938, 77 S.Ct. 1400, 1 L.Ed.2d 1537; West v. United States, D.C.E.D.Pa., 143 F.Supp. 473; Berge v. National Bulk Carriers, 2 Cir., 251 F.2d 717. Cf. Halecki v. United New York and Skovgaard v. The M/V Tungus.

In Sieracki, Hawn and Petterson, the vessels were in the general control of their officers, loading cargo, when the longshoremen and carpenters were hurt. Those cases hold that an owner's duty to provide a seaworthy vessel, with appurtenant supplies and equipment, is not affected by the relinquishment to another, such as a stevedoring company, of control of a portion of the ship or of a particular operation, such as loading.[3] In the instant case, however, the barge had been temporarily withdrawn from navigation and delivered into the sole custody and control of Amherst, the dry-dock company. While in extent the work was not as great as in Berryhill, Berge and Raidy, in character it was the same, because it could not be done by the regular crew, but required that the vessel be withdrawn from navigation and turned over to a drydock company having special facilities and equipment for the work. The work order called for drydocking of the vessel; without such drydocking the bottom and sides of the barge would have been inaccessible. The warranty of seaworthiness does not apply in that situation.

■ The barge was not unseaworthy. In its ordinary operations, it was unmanned, and did not require life saving equipment. It did not become unseaworthy when men went aboard after it had been turned over to a repair yard under the circumstances of this case. Lester v. United States, 2 Cir., 234 F.2d 625, certiorari denied 352 U.S. 889, 77 S.Ct. 130, 1 L.Ed.2d 85.

■ B. Nor was Carbide negligent in delivering the barge to Amherst without mounting life rings or other safety equipment on the barge, or in failing to rescue Goett after he fell into the river, as contended by his administratrix. There is, of course, a duty on a vessel and her owners to have life saving equipment available to rescue members of her crew who fall overboard while the vessel is in operation. Sadler v. Pennsylvania R. Co., 4 Cir., 159 F.2d 784, and cases cited. A similar duty is owed to business visitors who come aboard while the vessel is in the custody and control of her officers or other representatives of the owners. But in the instant case Carbide had delivered the barge into the sole custody and control of Amherst. Carbide's duty under those circumstances was to warn Amherst and its employees of any hidden danger or latent defect. There was no hidden danger or latent defect in the barge. It was the duty of Amherst to supply its employees with a reasonably safe place in which to work. It knew and controlled the conditions of the work and the equipment which would be used. It was Amherst's responsibility to decide whether a temporary railing or stanchions should be erected, whether its men should be required to wear preservers, and whether and where life rings and other rescue equipment should be mounted. For negligence in any of these respects it would be liable to plaintiff herein for damages, were it not for the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950.[4] But Carbide is not liable to plaintiff for negligence; it breached no duty it owed to Goett. Lester v. United States; West v. United States; Raidy v. United States; 38 Am.Jur., Negligence, sec. 97; Restatement, Torts, sec. 340, 343; Harper and James, The Law of Torts, vol. 2, sec. 21.1.

Judgment should have been entered in favor of defendant. This decision makes it unnecessary to pass on the other questions raised by the several parties.

Reversed.

3. See discussion in Petterson v. Alaska S. S. Co., 9 Cir., 205 F.2d 478, at page 479.

4. Under the terms of that Act Goett's wife and children are now entitled to receive, without proof of negligence on anyone's part, compensation which may exceed the maximum amount recoverable under the West Virginia Wrongful Death Act.