George **LATUS**, Libellant-Appellant,

v.

**UNITED STATES** of America, Respondent-Appellee and Appellant,

**Todd Shipyards Corp.**, Respondent-Impleaded-Appellee.

No. 232, Docket 25891.

United States Court of Appeals Second Circuit.

Argued March 8, 1960.

Decided April 11, 1960.

Thomas A. McDonald and Charles V. McDonald, Freeport, N. Y., for appellant.

Robert D. Klages, George Cochran Doub, Asst. Atty. Gen., Cornelius W. Wickersham, Jr., U. S. Atty., New York City, Samuel D. Slade, Benjamin H. Berman, Attorneys, Department of Justice, Washington, D. C., for the United States.

Patrick E. Gibbons, New York City, for impleaded-appellee.

Before LUMBARD, Chief Judge, and L. HAND and LEWIS, Circuit Judges.

L. HAND, Circuit Judge.

The libellant appeals from a decree in the admiralty, D.C., 170 F.Supp. 837, dismissing his libel both *in personam* and *in rem* to recover damages for personal injuries when in the employ of the impleaded respondent, Todd Shipyards, while painting the respondent's ship "Robert Fulton." The facts were as follows. In September, 1947, the "Fulton" was withdrawn from navigation, dismantled, and laid up in the James River in the "moth-ball fleet." In October, 1951, it was decided to put her again into service, and she was towed to the Todd Shipyards under a contract by which that company agreed to make such repairs as were necessary to put her in commission. She lay at the shipyard until November 28 when, all the required

work having been completed, a temporary Certificate of Safety was issued to her. Her crew had already "signed on" the day before. On November 23, the libellant, a painter employed by the Shipyards Company under this contract had been engaged in painting the ship and walked over one of the hatches which was covered with a tarpaulin. The hatch cover had been taken out to allow entry to and from the hold and had not been replaced when the tarpaulin was spread over the hatch. The libellant stepped upon the tarpaulin where the hatch cover had been taken off and fell through to the hold, sustaining severe injuries. He sued the United States as owner and the United States impleaded the Shipyards Corporation. His position is twofold. He argues that the ship was liable *in rem* for failing to provide him with a safe place to work; and that he was covered by a warranty of seaworthiness. He advances two other reasons to support his recovery, but these we do not find it necessary to discuss independently of our consideration of the first two.

[1-3] It is now authoritatively settled, if indeed it was ever in doubt, that, when a ship has been withdrawn from navigation and while she is being reconditioned, she does not warrant her seaworthiness to those who work aboard her until she returns to active service. West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161. Although the work that the libellant was doing was of a kind that would be done by the crew, when the ship is in commission, so that Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, would have applied, if she had been, we cannot agree with the libellant's argument that a ship is progressively returned to service as to those parts of her on which the necessary restoration had been done. The warranty of seaworthiness has never been divided into fragments; a ship is either fitted for her duties in all respects, or she is not fitted at all. This does not mean that before she is fit her owner may not be liable to those who come aboard because of his neglect to provide for their safety; but

that is quite another matter from imposing upon him the conventional warranty of seaworthiness. There is not a syllable in the books to suggest that the warranty attaches seriatim as part by part is made ready for service. It would altogether ignore the historical origin of the doctrine to attempt to rationalize it in such a way. True, it has been much extended since The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, but it has always retained the elements of its origin—an absolute duty imposed, regardless of fault, going back to archaistic notions of legal obligations and penalties imposed on inanimate objects, but retaining its vitality because of its contribution to modern notions of the distribution of loss among those who follow the sea. The fact that in the case at bar the master and some of the other officers were on board to inspect the progress of the work was immaterial. That was also true in West v. United States, supra, 361 U.S. 123, 80 S.Ct. 193.

Next is the question whether the United States, as owner, was charged with the same duty to use reasonable care to furnish the libellant with a safe place to work that attaches to an owner in whose premises work is being done by those employed thereon. Again, West v. United States, supra, provides the answer because the United States, as owner, "had no control over the vessel, or power either to supervise or to control the repair work in which the petitioner" (libellant) "was engaged." The libellant does indeed deny that the United States ever lost control of "The Fulton," and further asserts that, if it did, it had reasserted control before the libellant was injured; but the findings preclude either assumption. They are as follows. "In the instant case there is no evidence whatever that the respondent" (United States) "created the defective condition which caused the libellant's injuries. Control of the vessel and of the manner in which repairs were made rested with Todd. Although at the time of and during the day preceding the accident employees of the respondent were aboard

the vessel, it was the function of such persons only to inspect completed repairs made by Todd to determine that they were made in accordance with the requirements of the contract. During the course of repair work the hatches were continually being opened and closed by Todd's employees, and only by Todd's employees, to permit Todd to perform various phases of its work." Certainly the finding we have just quoted was not "clearly erroneous." Although we recognize that a shipowner in possession owes the personal duty of reasonable care to all who may lawfully come on board, Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 such a duty presupposes that he is in control.

■ The libellant's final position that even if the United States was under no personal duty to use such reasonable care, in any event a liability *in rem* arose independently. There are of course such duties known to the maritime law, the best known of which is the liability of a ship for the negligence of a compulsory pilot, The China, 7 Wall. 53, 19 L.Ed. 67. It is also true that when a ship is on "bare-boat" charter, negligence of the crew "appointed and paid by the charterers" will charge the ship *in rem*. The Barnstable, 181 U.S. 464, 21 S.Ct. 684, 45 L.Ed. 954. In the case at bar Todd Shipyards was not such a charterer, or indeed a charterer at all. Like the owner's warranty of seaworthiness, an implied liability *in rem*, regardless of any personal duty of the owner, is a fiction, reaching far back into the early history of the law; and as has been often quoted, "a fiction is not a satisfactory ground for taking one man's property to satisfy another man's wrong." The Eugene F.

Moran, 212 U.S. 466, 474, 29 S.Ct. 339, 340, 53 L.Ed. 600. We can find no decision in which such a lien has been imposed on a ship for the fault of another person than the owner, when that fault is not that of a "bare-boat" charterer, or of some specified class of person like a compulsory pilot. Hercules Co. v. The Brigadier General Absolom Baird, 3 Cir., 214 F.2d 66, was a suit to recover for repairs under § 972 of Title 46; it has no relevancy to the case at bar. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 did not concern any right *in rem*. In Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, a stevedore's employee had sued the ship *in rem* as unseaworthy and had recovered; and the shipowner sued the libellant's employer for its negligence. The original recovery was under the doctrine of Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, and the owner's recovery was upon the fault of the stevedore's employer. That is irrelevant as to whether the libellant himself had a claim *in rem* against a ship, independently of any warranty. Grillea v. United States, 2 Cir., 232 F.2d 919 merely held that a longshoreman might sue a ship *in rem* if he was injured by her unseaworthiness, which no one denies. Perhaps it may turn out in the end that the Supreme Court will hold that, though there be no warranty of seaworthiness, the fault of a repairman will establish a maritime lien against a ship because she has not furnished a safe place for shoreworkers; but nothing of the sort has ever as yet been decided, and, as we have said, the doctrine of the ship as a jural entity is not one to be expanded.

Decree affirmed.