Charles M. MOSELY, Plaintiff,

v.

UNITED STATES of America,
Defendant and Third-Party
Plaintiff,

v.

NEWPORT NEWS SHIPBUILDING
AND DRY DOCK COMPANY,
Third-Party Defendant.

No. 1192.

United States District Court
E. D. Virginia,
Newport News Division.

Aug. 10, 1967.

Howell, Anninos & Daugherty, Henry E. Howell, Jr., Norfolk, Va., for plaintiff.

Bertram E. Snyder, Dept. of Justice, Washington, D. C., for defendant and third-party plaintiff.

William McL. Ferguson, Newport News, Va., for third-party defendant.

MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

On September 11, 1964, shortly before midnight, plaintiff, an employee of Newport News Shipbuilding and Dry Dock Company (hereinafter called Shipyard), was injured when he allegedly slipped on grease on the flight of stairs aboard the AMERICA, an aircraft car-

**778**

rier then being constructed for the United States Navy by the Shipyard. Negligence is asserted in not affording plaintiff a reasonably safe place in which to work. In the alternative, plaintiff urges that defendant owed a warrranty of seaworthiness which was breached. The matter is before the Court on defendant's motion for summary judgment predicated upon the plaintiff's deposition and an affidavit of one Petty, Assistant Superintendent of the Shipyard's Outfitting Division. For reasons herein stated, the motion for summary judgment on the claim of unseaworthiness will be sustained but the case must proceed to trial on the negligence issue unless the plaintiff elects to concede that the "control" exercised by the defendant was limited to supervising the work for the purpose of ascertaining that the work was being done in accordance with the contract between the Shipyard and the Government. From the affidavit of Petty, the presence of naval personnel aboard the vessel was so limited. However, as slight as it may be, there are inferences to be drawn from plaintiff's deposition which indicate that there may have been some exercise of control by Navy personnel going beyond the limitation noted above.

■ In the absence of control over the vessel, or power either to supervise or control the work in which plaintiff was engaged, it is abundantly clear that plaintiff cannot recover. West v. United States, 361 U.S. 118, 123, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); United States v. Page, 350 F.2d 28, 31 (10 Cir., 1965), cert. den. 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966); Latus v. United States, 277 F.2d 264, 266–267 (2 Cir., 1960); Union Carbide Corp. v. Goett, 256 F.2d 449, 455 (4 Cir., 1958). There is no contention that there was any "hidden" or "inherent" defect which could, under some circumstances, make the owner guilty of negligence even though he had no control over the vessel and the work being done thereon.

The important question in this case is the status of the AMERICA. Her keel was laid on the "Northside"; she had been launched and thereafter placed on the "Southside" to be outfitted. Probably by reason of the nature of the work being done on the "Northside" there was no naval supervision or inspection at that time. The accident occurred while the vessel was being outfitted on the "Southside". Sea trials for the AMERICA were not scheduled until November 18, 1964, more than two months after the accident. At the time of the accident (1) the vessel had not been under way under her own power, the only movement being by tug; (2) the steering gear had not been tested; (3) the radar and electronic gear had not been tested; (4) the fuel had not been loaded aboard; (5) there was no crew, as such, aboard; (6) the stability test had not been conducted; and (7) a myriad of other items were in need of attention. Viewed in this uncontradicted light, the AMERICA was, at best, in her final stages of construction.

■ We conclude that the status of the AMERICA was such that no warranty of seaworthiness was due to anyone aboard, even assuming that the work being done by plaintiff was that traditionally performed by a seaman. Plaintiff's reliance upon Tucker v. Alexandroff, 183 U.S. 424, 22 S.Ct. 195, 46 L.Ed. 264 (1902), is misplaced. The Supreme Court was there dealing with the desertion of a seaman from a vessel which had been launched, but was still under construction. For the limited purpose of construing a treaty between the United States and Russia, the Supreme Court held that it was a "ship". Later decisions pointedly demonstrate that the Tucker definition of a "ship" was that "pertained to a treaty agreement with a foreign nation". General Engine & Mach. Works, Inc. v. Slay, 222 F.Supp. 745, 748 (S.D.Ala., 1963); Thames Towboat Co. v. The Schooner "Francis McDonald", 254 U.S. 242, 244, 41 S.Ct. 65, 65 L.Ed. 245 (1920).

The Fourth Circuit has twice spoken on the subject. While in each instance it is probably dictum, the clarity of ex-

pression is such as to foreclose any interpretation other than that reached in this case. In Frankel v. Bethlehem-Fairfield Shipyard, Inc., 132 F.2d 634 (4 Cir., 1942), the vessel was being reactivated following a period of inactivation in the mothball fleet and the court intimated that an incompleted vessel presented an even clearer case for the non-application of the warranty of seaworthiness where it said (132 F.2d 635):

> "Accordingly, since a contract for the building of a ship is non-maritime in character, a tort arising out of work on a launched but incompleted vessel also lacks maritime flavor, despite the fact that the vessel is lying in navigable waters. Furthermore, an incompleted vessel has yet to take her place in commerce and navigation; whereas a vessel which has been commissioned and taken into navigation and commerce remains in that status even when coming into a dock and undergoing certain repairs."

A more recent case, Hill v. Diamond, 311 F.2d 789 (4 Cir., 1962), cites *Frankel* and West v. United States, supra, with approval. A section of tunnel tube, to be finally used in the construction of vehicular tunnel, was held not to be a vessel, even though burdened with some maritime duties while being towed and, by analogy, the court said (311 F.2d 792):

> "As much might be said * * * of a partially constructed ship being towed immediately after launching to an outfitting pier where the construction work would be continued until completion, but the ship, while moored at the outfitting pier and undergoing major construction, would not be a vessel, in navigation within the meaning of the Jones Act."

Plaintiff's argument that the AMERICA was liable for the tort committed, and the statement of Mr. Justice White (taken out of context) in Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 210, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), adds nothing to the present case. The AMERICA was not a ship in navigation or in operation at the time of plaintiff's accident. There is no merit to plaintiff's theory of *in rem* liability. This same contention was advanced by the same advocate, and repudiated, in Noel v. Isbrandtsen Co., 287 F.2d 783 (4 Cir., 1961), cert. den. 366 U.S. 975, 81 S.Ct. 1944, 6 L.Ed.2d 1264. It requires no further discussion.

An order may be presented in accordance with this memorandum.