Bobby L. VAN HORN, Appellant,

v.

GULF ATLANTIC TOWING CORPORA-
TION, Defendant and Third-Party Plain-
tiff, and COLONNA'S SHIPYARD, IN-
CORPORATED, Third-Party Defendant,
Appellees.

No. 11318.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 9, 1967.

Decided Jan. 9, 1968.

Henry E. Howell, Jr., Norfolk, Va. (Howell, Anninos & Daugherty, Norfolk, Va., on brief), for appellant.

Roy L. Sykes, Norfolk, Va. (Jett, Sykes & Berkley, Robert M. Hughes, III, and Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellees.

Before SOBELOFF, CRAVEN and BUTZNER, Circuit Judges.

SOBELOFF, Circuit Judge:

Predicating its decision upon the pleadings, affidavits and pre-trial discovery and relying primarily upon this court's opinion in Union Carbide Corp. v. Goett, 256 F.2d 449 (1958),[1] the District Court granted defendant's motion for summary judgment on both bases of the complaint, unseaworthiness and negligence. From this judgment the plaintiff appeals, claiming that he is entitled to a jury trial in this civil action in which jurisdiction is founded upon diversity of citizenship.

The instant case does indeed bear a marked factual resemblance to *Goett*. In each, an employee of a ship repair yard was allegedly injured while laboring aboard a barge, moored and lying afloat on navigable water and awaiting extensive drydock repairs. More particularly here, Bobby Van Horn, plaintiff, was pulling along the barge's deck a heavy pump to be used in removing water from the holds when he allegedly slipped on a residue of soy beans and/or wheat and ruptured an intervertebral disc. He contends that the slippery condition resulted from the defendant barge owner's negligent failure to clean the deck after the completion of the barge's prior voyage, and breached the warranty of seaworthiness owing Van Horn.

After delivering its cargo of grain to a Chesapeake, Virginia warehouse, the barge Bimbo, owned by defendant Gulf Atlantic Towing Corporation (Gatco), was transported to the yard of Van Horn's employer, Colonna Shipyard, Inc., on February 10, 1966, for extensive repairs and renewals in preparation for its biennial Coast Guard inspection. Afloat on the Elizabeth River, moored to the eastern side of Colonna's #1 hauling dock, the barge was left without any Gatco employee on board or in attendance. The defendant contends and the District Court decided that the barge was in the exclusive custody and control of Colonna on February 11, 1966 when Van Horn was allegedly injured.

Among the contemplated repairs, totaling $17,891.82, were the renewal of steel bilge turn plates on both starboard and port sides, the renewal of transition and transverse plates, sandwashing and painting bottom sides to light load line. This work necessitated the hauling of the barge upon marine railways; the hauling in turn necessitated pumping to lighten the load. In fact, the second item on the work sheet prepared by Gatco instructs Colonna to "pump water from all void compartments preparatory to hauling."

Preparing to perform this task on the morning of February 11, Colonna's foreman ordered several employees, including Van Horn, to board the barge and begin pumping. Van Horn admits that he observed the slippery residue shortly after boarding the barge and before the accident. While pulling a pump from one hold to another, Van Horn slipped and fell backwards, the pump landing on him. As a result, he spent nearly a month in the hospital where he underwent a spinal fusion.

On the motion for summary judgment, the District Court correctly drew all possible inferences favorable to the plaintiff. Accordingly, the court assumed for purposes of the motion, that the grain residue made the deck slippery and was the proximate cause of the accident. We make the same assumptions for purposes of this appeal.

1. Vacated and remanded on other grounds, 361 U.S. 340, 80 S.Ct. 357, 4 L.Ed.2d 341 decided on remand, 278 F.2d 319, cert. denied 364 U.S. 826, 81 S.Ct. 64, 5 L.Ed. 2d 55 (1960). Goett's subsequent history is of no relevance to the issues presented by this appeal.

■ The District Court correctly interpreted *Goett,* which held that there is no warranty of seaworthiness, even assuming a dock worker is doing traditional seaman's duty, when the vessel has been withdrawn from navigation and placed in the custody and control of a drydock company. *Goett* also held that in these circumstances, the only duty a shipowner owes shipyard employees is to warn of hidden dangers or latent defects. In the absence of a breach of that duty, *Goett* maintains, there can be no cause of action for negligence.

Since it is admitted here that Van Horn observed the grain residue before slipping, there can be no contention that the condition of the deck constituted a hidden or latent defect. Nor can it be denied that this barge had been temporarily withdrawn from navigation. Therefore, if both propositions for which *Goett* stands are still valid in light of later Supreme Court decisions, the judgment of the District Court in this case must be affirmed. However, we find that while the seaworthiness aspect of *Goett* has been confirmed by West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959), *Goett's* statements about negligence no longer appear sound.

No citation follows the statement in *Goett* that the shipowner's only duty is to warn of hidden defects, but the invocation, at the end of the paragraph containing that language, of treatise sections dealing with land law indicates that the proposition finds its source in the common law's treatment of visitors upon land and the obligations owed them by owners or occupiers. The rule to be culled from the cited sources is that an owner or occupier of land is liable in negligence to an invitee only when he fails to warn of dangers of which he is aware but the invitee is ignorant.

Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), decided after *Goett,* specifically rejected the "conceptualistic distinctions" of the land law and declared them foreign to admiralty's "traditions of simplicity and practicality." In that case involving an acquaintance visiting a seaman aboard ship on a social call, the Supreme Court held: "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." If this much is owed to a mere visitor, how can any less be demanded for one who boards at the instance and for the benefit of the owner? The Court placed no reliance on the fact that the ship in *Kermarec* had not been withdrawn from navigation, and this fortuity does not serve to distinguish *Kermarec* from the instant case.

Even more on point is United New York and New Jersey Sandy Hook Pilots Association v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959), decided on the same day as *Kermarec.* There an employee of a subcontractor of a ship repair yard was killed while cleaning the generators of a vessel which had been withdrawn from navigation. His administratrix sued the shipowner for unseaworthiness and negligence under a state wrongful death statute which, like the one in *Goett,* incorporated maritime principles. Regarding the negligence claim, the Supreme Court reaffirmed Judge Learned Hand's pronouncement in the Court of Appeals that "the evidence created an issue that could be decided only by a verdict." The Supreme Court went on to say that the shipowner "owed a duty of exercising reasonable care for the safety of the decedent," a dock worker like Van Horn.

■ On the basis of *Kermarec* and *Halecki,* we hold that federal maritime law, which of course governs this tort action that arose on navigable waters, requires that a shipowner who delivers his vessel to drydock exercise due care under all the circumstances to provide a reasonably safe place to work for those who foreseeably will come aboard to service the vessel. See Olah v. The S. S. Juladurga, 343 F.2d 457 (4th Cir. 1965); see also Norris, The Law of Maritime Personal Injuries, § 38 (1959).

Gatco's contention that this rule does not apply in the present case because it no longer had control over the vessel is specious. While it is true that Gatco had surrendered control of the barge before the time of the injury, that fact is not decisive of the issue before us because it did have control at the crucial time—the creation of the dangerous condition. Gatco knew in advance of delivery that Colonna's employees would be coming aboard the Bimbo to pump its holds and should have foreseen that a slippery surface might prove hazardous to these persons. It was at or before delivery that Gatco had the duty of either having the deck cleaned or at least warning Colonna's employees. In the absence of any steps to avert harm, a cause of action for negligence arises.

Taken in context, the language dealing with negligence in West, 361 U.S. at 122–124, 80 S.Ct. at 193, does not militate against our holding here. Control of the vessel was a vital test in that case because the dangerous condition of which the injured drydock worker complained was caused by a fellow drydock worker after custody of the ship had been turned over to the repairman. Specifically noting this, the Court said: "It appears manifestly unfair to apply the requirement of a safe place to work to the shipowner when he has no control over the ship or the repairs, *and the work of repair in effect creates the danger which makes the place unsafe.*" (Emphasis added.)

Whether due care under all the circumstances was observed by the present shipowner at the relevant times and to what proportionate extent, if any, Van Horn was at fault are clearly questions for jury determination after a full trial. See Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). As the noted admiralty text authors, Gilmore and Black, observe regarding negligence under the Jones Act, "[i]t would be a rare court in an unusual case which would take the negligence issue away from the jury * * *." Gilmore and Black, The Law of Admiral-

ty, 311 (1957). The same principle should be applicable under the general maritime concept of negligence. As a result, we hold that the lower court erred in taking this case from the jury and deciding as a matter of law that Gatco was not negligent.

We therefore remand the case for trial on the negligence and contributory negligence issues, while affirming the District Court's action on the unseaworthiness claim.

Affirmed as to the unseaworthiness issue; judgment vacated and case remanded for trial on issue of negligence.