Francis R. PECK, Plaintiff,

v.

**UNITED STATES STEEL CORPORA-
TION, a corporation, Defendant.**

No. 4–68–Civ. 376.

United States District Court,
D. Minnesota,
Fourth Division.

June 9, 1970.

William H. DeParcq, and James R. Schwebel, DeParcq, Anderson, Perl & Hunegs, Minneapolis, Minn., for plaintiff.

Benjamin F. Cornelius, Law Dept., U. S. Steel Corporation, Chicago, Ill., for defendant.

## MEMORANDUM

LARSON, District Judge.

The facts of this case have been set out in detail by the Court in its Findings of Fact and will not be repeated here. Based on those findings, it is apparent that plaintiff may recover damages for a breach of warranty of seaworthiness if he fits into the category of a shore-based work injured on a vessel in navigation while doing a seaman's work. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Reed v. S.S. Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); Jackson v. Lykes Steamship Co., 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967).

■■ It is clear that a "vessel" need not be the traditional ocean going vessel to be subject to a warranty of seaworthiness. The definition includes a variety of special purpose craft, many of which have no motive power of their own, and even includes relatively permanent or stationary structures. Offshore Company v. Robison, 266 F.2d 769 (5th Cir. 1959); United States v. Moran Towing and Transportation Co., 374 F.2d 656 (4th Cir. 1967); Summerlin v. Massman Construction Co., 199 F.2d 715 (4th Cir. 1952); Producers' Drilling Co. v. Gray, 361 F.2d 432 (5th Cir. 1966). The S2 derrick barge is a special purpose craft which is clearly a "vessel" within the standards established by those cases.

It is stipulated that the Fort Randall Reservoir is a navigable water as that term has been defined by the Supreme Court.

■ Under the *Sieracki* doctrine, the warranty of seaworthiness extends to a shore worker who "is, in short, a seaman * * * doing a seaman's work and incurring a seaman's hazards." *Sieracki, supra,* 328 U.S. at p. 99, 66 S.Ct. at p. 879. The fact that Peck was by label an ironworker is not determinative of his right to the warranty of seaworthiness. The type of work engaged in by plaintiff at the time of his injury was the type traditionally done by seamen and was of the general type of maintenance work that would have continued when the vessel was at the bridge site. Lawlor v. Socony-Vacuum Oil Company, Inc., 275 F.2d 599 (2nd Cir. 1959), cert. den. 363 U.S. 844, 80 S.Ct. 1614, 4 L.Ed.2d 1728 (1960); The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959). See also Christiansen v. United States, 94 F.Supp. 934 (D.C.Mass.1951), aff'd 192 F.2d 199 (1st Cir. 1951); Torres v. The Kastor, 227 F.2d 664 (2nd Cir. 1955); Crawford v. Pope & Talbot, Inc., 206 F.2d 784 (3rd Cir. 1953); Landsburg v. Acadia Overseas Freighters, Ltd., 219 F.2d 440 (3rd Cir. 1955).

The test for determining whether a vessel is "in navigation" is the "status of the ship." West v. United States, 361 U.S. 118, 122, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959). Defendant argues that the S2 derrick was not completed and that therefore no warranty of seaworthiness could attach. There is language to support defendant's position:

"The warranty of seaworthiness has never been divided into fragments; a ship is either fitted for her duties in all respects, or she is not fitted at all. * * * There is not a syllable in the books to suggest that the warranty attaches seriatim as part by part is made ready for service." Latus v. United States, 277 F.2d 264 (2nd Cir. 1960).

But the facts of this case are distinguishable from *Latus* and other cases where

a vessel has been found to be out of navigation by reason of still being under construction or being in port or drydock undergoing major renovation.

■ Defendant here treated the S2 derrick barge as though it was completed and in condition for use for one of its design purposes. The decision to use the S2 derrick barge was admittedly a negligent one because in fact there was more work that should have been done, i. e., completing the welding on the rear sill beam. But to hold plaintiff is deprived of his remedy because defendant chose to act as though the vessel was ready for use when it was not would lead to a result completely incongruous with the purpose of the warranty.

There is considerable force in the argument that shipbuilding is non-maritime, but defendant's reliance on West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959), and Roper v. United States, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1 (1961), is misplaced. In *West*, a deactivated ship was at a repair dock undergoing major renovation designed to make her seaworthy. The vessel was in the hands of the ship repair contractor for a complete overhaul, including cleaning and repair of the defective valve which produced injury to West. The Court said:

"This undertaking was not 'ship's work' but a complete overhaul of such nature, magnitude, and importance as to require the vessel to be turned over to a ship repair contractor and docked for the sole purpose of making her seaworthy. It would be an unfair contradiction to say that the owner held the vessel out as seaworthy in such a case. It would appear that the focus should be on the status of the ship, the pattern of the repairs, and the extensive nature of the work contracted to be done, rather than the specific type of work that each of the numerous shore-based workmen is doing on shipboard at the moment of injury." 361 U.S. at p. 122, 80 S.Ct. at p. 192.

The factors which serve to distinguish this case from the situation there were explicitly recognized:

"  *  *  *  the vessels involved in the cases depended upon by petitioner were, at the times of the injuries, in the hands and under the control of the owners or charterers, and, instead of undergoing general repairs, were in active maritime service in the course of loading or unloading cargo pursuant to voyages. The workmen, like the seamen, depended upon the seaworthiness of the ships, their equipment, and gear. They were obliged to work with whatever the shipowners supplied and it was only fair for the latter to be subjected to the absolute warranty that the ships were seaworthy." 361 U.S. at p. 121, 80 S.Ct. at p. 192.

Similarly in *Roper*, a de-activated Liberty ship used as a grain warehouse had been towed from one location to another. The accident occurred during the unloading of grain while the ship was moored at its new berth. The Supreme Court affirmed the trial court's finding that the act of towing the vessel from one berth to another was not sufficient to place an otherwise obviously de-activated ship "in navigation." The vessel was not prepared for use as a barge or converted to any navigational use. But here the S2 derrick was being readied for such a use, and on the day of the accident defendant determined that it was ready for such a use.

■ Defendant here was in complete control of the S2 derrick. The decision as to when this vessel was ready for use rested exclusively with defendant. Defendant's foreman, Ralston, in deciding to make the lift of the Tisco tug, warranted to the workmen on board that the vessel was seaworthy, that is, that the equipment and gear were in proper condition for the use to which they were to be put. When the equipment failed, plaintiff and others were exposed to serious hazards, including drowning, burning or being struck by falling ma-

**908**

terials. Under those circumstances, the warranty was clearly breached.

The injury to plaintiff was not directly related to any construction work on the S2 derrick. He was not injured in the course of repairing a defect. He was not injured in the course of doing some work to complete construction. He was injured because the defendant determined that the vessel was ready to be used when, in fact, it was not.

The final question to be determined is the claim that plaintiff was guilty of laches. The law requires that both inexcusable delay on the part of the plaintiff and prejudice to the defendant because of the delay be present before laches will apply to bar the action. Measuring laches by the analogous three-year statute of limitations under the Jones Act would be unwarranted in this case, since there is ample evidence that defendant has not been prejudiced in any way by the late filing of this action. West v. Upper Mississippi Towing Corp., 221 F.Supp. 590 (D.C.Minn.1963), appeal dismissed in Upper Mississippi Towing Corp. v. West, 388 F.2d 823 (8th Cir. 1964).

However, the equitable determination for laches cannot be used in determining whether a Jones Act claim may be maintained. There is no evidence that plaintiff relied on any misrepresentation of a material fact by Weekman, defendant's claims agent, or that Weekman's advice was in any way responsible for the delay in filing of this suit. This case is therefore not within Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253 (4th Cir. 1949), or Burnett v. New York Central R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1964). Therefore, the Jones Act claim is barred. 45 U.S.C. § 56.

For the above reasons, plaintiff is entitled to judgment.