**MARTINI v. UNITED STATES.**

No. 29 Docket 22026.

United States Court of Appeals
Second Circuit.

Argued Oct. 11, 1951.

Decided Nov. 30, 1951.

Gasper S. Fasullo and Herman E. Hoberman, Brooklyn, N. Y. (Jacob Rassner, New York City, of counsel), for libelant.

Myles J. Lane, U. S. Atty., New York City (Tompkins, Boal & Tompkins, Arthur M. Boal, New York City, of counsel), for libelee-appellee.

Before AUGUSTUS N. HAND, CHASE and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

The appellant Martini filed a libel against the United States under the Suits in Admiralty Act, 41 Stat. 525, 46 U.S.C.A. § 741 et seq.,[1] to recover for personal injuries which he alleged he sustained on October 31, 1945, in a fall in the hold of a vessel owned by the United States which at the time was docked at the pier at 132nd Street, North River, New York.

At the time of the accident Martini was employed as superintendent by Cardinal Engineering Company which had been selected by the appropriate authorities to make certain repairs to the vessel involved. On the day in question Martini, with the

1. Seven individuals alleged to be copartners trading as South Atlantic Steamship Line, were also joined as libelees but the libel was dismissed as to them on the libelant's motion on the authority of Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317, 93 L. Ed. 1692.

general superintendent of Cardinal Engineering Co., and others, had gone on board to make a survey of the repairs requested by the acting chief engineer of the vessel which included, among other matters, rectification of flooding of the galley in No. 2 tweendeck by water from the troop's shower bath which occurred when the ship rolled with a list to port. The acting chief engineer recognized, and told Martini and his associates before they started to survey the repairs requested, that this condition was caused either by the fact that the ship was built without any port scupper, or else by the fact that the port scupper, if there were one, was clogged or its clapper valve was inoperative. Martini with his general superintendent and some other persons, but not the vessel's acting chief engineer, went into the No. 2 hold to examine the situation, and discovered by the use of a flashlight that there was no port scupper at all. The general superintendent then started to leave, but Martini climbed up the cargo battens or sweat boards attached to the starboard side of the hold to examine the starboard scupper and its clapper valve which had not been causing any trouble and admittedly was not responsible or thought to be responsible for the flooding of the galley. When he was some 18 or 20 feet above the floor of the hold a metal clip holding a cargo batten gave way and he fell. The court below found that the clip broke because it was cracked and that the crack had been painted over with coats of red lead and gray paint so that it could not be seen.

■ The court below ruled as a matter of law on the authority of Guerrini v. United States (2d Cir., 1948,) 167 F.2d 352 that the ship owed no duty of seaworthiness to an employee of an independent contractor in the situation of the libelant, and finding no negligence on the part of the libelee which caused or contributed to the libelant's injury, it entered a final decree dismissing the libel.

The Guerrini case is squarely in point and fully supports the District Court's ruling that Martini was not one to whom the ship owed the duty of seaworthiness. We see no occasion to recapitulate the reasoning of that case and we are not disposed to depart from or to modify its ruling.

■ The libelant-appellant complains of the finding of lack of causal negligence on the part of the vessel largely on the ground that it was clearly established to be the ship's duty to provide Martini with a ladder to enable him to make the necessary inspection preliminary to undertaking the repairs requested, and that, having failed to furnish a ladder it should have been anticipated that Martini would use the batten boards in lieu of a ladder in accordance with a common, although an unsafe practice. Thus it is said that the ship utterly failed in its duty to provide Martini as a business invitee with a safe place to work, or to warn him of hidden dangers in his work place.

In the first place the evidence is conflicting as to the duty of the ship to supply ladders rather than for the contractor to supply them, and the court below found that it had not been established that it was customary for the ship to supply ladders to employees of independent contractors working on board. And in the second place the evidence is conflicting as to whether or not Martini asked the ship's engineer for a ladder. Moreover, and this is a full answer to the contention, there was no need for a ladder because inspection by flashlight from the floor of the hold showed that there was no port scupper, and it must then have been clearly apparent that it was the lack of such a scupper, and not a defective one, that caused the flooding. Thus as the court below found, "It was not necessary for libelant to examine the starboard clapper valve when he found that there was no scupper or clapper valve on the port side since this was the cause of the water backing up into the No. 2 tweendeck." So far as we can see Martini was engaged when he fell in a needless exploratory expedition for some purpose of his own, which those in charge of the vessel had no reason to anticipate, and hence were under no duty either to warn against or to make safe by supplying a ladder.

The decree of the District Court is affirmed.