**Louise LEE, Appellant,**

v.

**PURE OIL COMPANY, Appellee.**

**No. 12056.**

United States Court of Appeals, Sixth Circuit.

Jan. 31, 1955.

W. A. McTighe, Memphis, Tenn. (Nicholson, McTighe, Webb & Cleaves, Memphis, Tenn., on the brief), for appellant.

Edward B. Hayes, Chicago, Ill. (William B. Miller, Jr., Lord, Bissell & Kadyk, Chicago, Ill., Burch, Porter & Johnson, Memphis, Tenn., on the brief), for appellee.

Before ALLEN, MILLER, and STEWART, Circuit Judges.

STEWART, Circuit Judge.

Appellant brought this action in the district court for damages resulting from the death of her husband. He was drowned in the Mississippi River after falling from a barge owned by appellee, which was moored near the appellee's docks in Memphis.

The deceased was employed by a Memphis bakery as a delivery truck driver and bread salesman. On the morning of his death, he called at a Memphis grocery to deliver bread. As a part of its business the grocery owned and operated a boat on the Mississippi which it used in the river grocery business to deliver supplies to towboats.

When he made his delivery at the grocery that morning the deceased was informed that an order for bread from the grocery had been received by radio-telephone from appellee's towboat, the "Charles W. Snider." The grocery truck was not there to take this order to its delivery boat, and the deceased accordingly volunteered to make the delivery.

He drove to the appellee's docks, where several of appellee's barges were moored alongside each other. Both the "Charles W. Snider" and the grocery delivery boat were out in the river beyond the barges. Carrying the bread, the deceased walked riverwards, crossing three barges. He then attempted to cross from the third barge to a fourth barge that the "Charles W. Snider" was bringing alongside it. In doing so he fell into the river. Within seconds two lines were thrown well within his reach, but he made no effort to grasp them. He sank out of sight, and his body was recovered some forty-five minutes later.

■ Appellant's original complaint was grounded upon appellee's alleged negligence. Federal jurisdiction was invoked by reason of diversity of citizenship. During the trial, however, appellant amended her complaint by adding an allegation that appellee had failed to provide a seaworthy vessel in not having equipped the barge with life sav-

ing equipment, and appellant requested three special instructions covering the admiralty doctrine of unseaworthiness. The trial court, upon appellee's motion, withdrew the issue of unseaworthiness from the jury's consideration, refused the requested instructions, and submitted the case to the jury only upon questions of negligence under the wrongful death statute of Tennessee. The jury returned a verdict for appellee, thus resolving those questions against appellant.

Appellant argues here that the court was in error in excluding the issue of unseaworthiness from the case, and in refusing to charge the jury in substantial accordance with her requested instructions covering that issue. In this contention appellant places primary reliance on Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. As explained in that case, the shipowner's liability for unseaworthiness " * * * is essentially a species of liability without fault, analogous to other well known instances in our law. * * * the liability is neither limited by conceptions of negligence nor contractual in character. * * * It is a form of absolute duty owing to all within the range of its humanitarian policy." 328 U.S. at pages 94–95, 66 S.Ct. at page 877.

In the Sieracki case the Supreme Court extended the shipowner's obligation of seaworthiness to a longshoreman injured while doing the ship's work aboard, although he was employed by an independent stevedoring contractor whom the owner had hired, to load the ship. A majority of the Court held that "this policy is not confined to seamen who perform the ship's service under immediate hire to the owner, but extends to those who render it with his consent or by his arrangement. * * * the liability arises as an incident, not merely of the seaman's contract, but of performing the ship's service with the owner's consent." 328 U.S. at pages 95, 97, 66 S.Ct. at page 877.

It is, of course, well settled that a right peculiar to the law of ad-miralty may be enforced either by a suit in admiralty or by one on the law side of the court. Carlisle Packing Co. v. Sandanger, 1922, 259 U.S. 255, 259, 42 S.Ct. 475, 66 L.Ed. 927; Garrett v. Moore-McCormack Co., 1942, 317 U.S. 239, 243–244, 63 S.Ct. 246, 87 L.Ed. 239. However, we think the trial court was not in error in holding that no such peculiar right arose from the circumstances of this case.

The admiralty rule that the vessel and owner are liable to indemnify a seaman for injury caused by unseaworthiness of the vessel or its appurtenances and equipment has been the settled law since the Supreme Court's ruling to that effect in The Osceola, 1903, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760; Mahnich v. Southern Steamship Co., 1944, 321 U.S. 96, 99, 64 S.Ct. 455, 88 L.Ed. 561. The Sieracki case marked an extension of the duty of seaworthiness to one not a member of the crew or of the ship's company and not employed by the vessel. The courts have been unwilling to extend the Sieracki doctrine beyond its own facts. Meyers v. Pittsburgh S. S. Co., 6 Cir., 1948, 165 F.2d 642; Guerrini v. United States, 2 Cir., 1948, 167 F.2d 352, certiorari denied 335 U.S. 843, 69 S.Ct. 65, 93 L.Ed. 393; see Martini v. United States, 2 Cir., 1951, 192 F.2d 649.

To extend the doctrine of unseaworthiness to the circumstances of the present case would not only extend it well beyond the facts of the Sieracki case, but would stretch it almost beyond recognition. Here the deceased was not performing a ship's service with the owner's "consent or by his arrangement." He was at best a mere volunteer. Indeed, he was performing no service at all to the barge alleged to be unseaworthy, but to the "Charles W. Snider," even assuming that a provisioner performs a ship's "service."

In any event, an extension of the Sieracki doctrine to one in the status of decedent in this case would be of no avail to the appellant. For the general maritime law that gives the right to recover for unseaworthiness does not ex-

tend that right to recovery for wrongful death. The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358; Levinson v. Deupree, 1953, 345 U.S. 648, 650, 73 S.Ct. 914, 97 L.Ed. 1319. The right to recover for wrongful death exists, if it exists at all, by virtue of some statute, state or federal.

It is not contended that any federal statute conferred a substantive right of action for wrongful death in this case.[1] The right was conferred by the statute of Tennessee allowing recovery only in the event of appellee's negligence. That being so, appellant had to take the statute as she found it, no mere "procedural niceties" being here in issue. Levinson v. Deupree, supra; Western Fuel Co. v. Garcia, 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210; Feige v. Hurley, 6 Cir., 1937, 89 F.2d 575, 578; Graham v. A. Lusi, Ltd., 5 Cir., 1953, 206 F.2d 223, 225. The statute which created the right created only a right to recover for negligence, and the jury's verdict settled all questions of negligence against the appellant.

What we have said makes further discussion unnecessary. It should perhaps be pointed out, however, that even a seaman claiming recovery for personal injury by unseaworthiness must show that it was unseaworthiness that caused his injuries. The New Dawn, D.C.Maine, 1930, 36 F.2d 970. In the present case the evidence showed that two lines, one with a loop on the end, were in fact thrown to the deceased within seconds after he was in the water, and that he made no effort whatever to reach for them. It is difficult to conceive of why he would have made any greater effort to reach for a life ring or life preserver, had either been available.

The other questions raised on this appeal involve matters within the trial court's sound discretion, of which there was no abuse.

The judgment of the district court is accordingly affirmed.

1. Cf. Federal Death on the High Seas Act, 46 U.S.C.A. §§ 761–768; Jones Act, 46 U.S.C.A. § 688.