GOETT, ADMINISTRATRIX, *v.* UNION CARBIDE
CORP. ET AL.

No. 3.   Argued November 12, 1959.—
Decided January 18, 1960.

*Harvey Goldstein* argued the cause for petitioner.
With him on the brief were *Ernest Franklin Pauley* and
*S. Eldridge Sampliner.*

*Charles M. Love* argued the cause and filed a brief for the Union Carbide Corporation, respondent. *Homer A. Holt, William T. O'Farrell* and *David D. Johnson* filed a brief for the Amherst Barge Co., respondent.

PER CURIAM.

This was a libel in admiralty brought against respondent Union Carbide Corporation by petitioner, the administratrix of Marvin Paul Goett. Goett had been an employee of respondent Amherst Barge Company, which was engaged in repairing a river barge owned by Union. The decedent was working on the barge when he fell off into the waters of the Kanawha River, and, after fruitless efforts at rescue, was drowned. The theory of the libel was that, alternatively, Union was negligent in turning over the barge to Amherst without its being equipped with rescue equipment, or that the vessel was unseaworthy without such equipment; and that the lack of rescue equipment caused the decedent's death. The accident had taken place in West Virginia waters and that State's Wrongful Death Act was relied upon. The District Court found that the vessel was in fact unseaworthy and that Union was negligent in the respect charged, causing the death of decedent, and that the decedent was not shown to have been guilty of contributory negligence or to have assumed the risk. The District Court bottomed Union's liability on negligence, and awarded petitioner $20,000 in damages, the maximum allowable under the West Virginia Act, though finding that the actual damages were substantially higher. On Union's appeal to the Court of Appeals, the judgment was reversed. 256 F. 2d 449.

The Court of Appeals held that, as a matter of law, Union owed no duty to the employees of Amherst once the vessel had been turned over to the latter. It accord-

ingly reversed the District Court's finding of negligence. It further held, contrary to the District Court, that the vessel was not unseaworthy at the time of the accident, and that in any event the decedent was not a person to whom the warranty of seaworthiness was owed. In the light of this determination, it did not pass on the question whether unseaworthiness would be in any event available as a ground for recovery in a West Virginia wrongful death action involving a maritime tort. We granted certiorari. 359 U. S. 923.

This case was decided in the lower courts before the decision of this Court in *The Tungus* v. *Skovgaard*, 358 U. S. 588, where it was held that it was a question of state law as to what is the proper substantive law to be applied to maritime torts within the territorial jurisdictions of the States in wrongful death cases. See *Hess* v. *United States, ante,* p. 314. Under this holding, in a maritime tort death case, the State might apply the substantive law generally applicable to wrongful death cases within its territory, or it might choose to incorporate the general maritime law's concepts of unseaworthiness or negligence.[1] Here the Court of Appeals did not decide which standard the West Virginia Act adopted. It did not articulate on what basis it was applying federal law if in fact it was; there is no intimation that it believed the West Virginia Act incorporated the maritime law's negligence standard, and in fact it expressly left open the question whether that Act incorporated the maritime standard of seaworthiness. It seems more likely to us to have passed on the negligence issue as a matter of federal maritime law; it cited only cases apply-

---

[1] For examples of the general maritime law's concept of negligence, see *Kermarec* v. *Compagnie Generale Transatlantique*, 358 U. S. 625; *Pope & Talbot, Inc.*, v. *Hawn*, 346 U. S. 406, 409; *The Max Morris*, 137 U. S. 1, 14–15.

ing the general maritime law's and the Jones Act's concepts of negligence, and general treatises; no West Virginia authority was relied upon.[2] The least that can be said is that it is highly doubtful[3] which law the Court of Appeals applied;[4] and so in the absence of any expression by it of which standard the West Virginia Act adopted, we do not believe we can permit its judgment to stand after our intervening decision in *The Tungus.*

Accordingly, so that the Court of Appeals, which is closer than we to matters of local law, may pass upon the questions of West Virginia law involved in the light of this Court's holding in *The Tungus,* we vacate its judgment and remand the cause to it to determine: (a) Whether the West Virginia Wrongful Death Act, as to this maritime tort, employs the West Virginia or the general maritime law concept of negligence; and, in the light of its determination, (b) whether the district judge's finding as to negligence is correct under the proper substantive law. To facilitate our discretionary review of

---

[2] The respondent here cites West Virginia precedents in an effort to sustain the Court of Appeals' determination.

[3] The views of the dissenting opinions here confirm us in our doubts. Some of the dissents take the view that the Court of Appeals should be affirmed because it undoubtedly decided the point as a matter of state law, while another is of the view that the Court of Appeals should be affirmed because it made sufficiently clear that it decided the point as a matter of federal law. Our views lie between these two.

[4] While the Court of Appeals declared that "The right to maintain such a suit can be enforced in admiralty only in accordance with the substantive law of the state whose statute is being adopted," 256 F. 2d, at 453, this discussion seems to us probably to have been in the context of the monetary limitation of the Act. Certainly there was no specific identification of this statement with the discussion of whether the negligence finding was justified. And if the statement is taken to mean that a State cannot adopt the maritime standard, it is not correct.

the Court of Appeals' findings as to unseaworthiness, it should also determine whether the West Virginia Act incorporates this standard of the general maritime law in death actions involving maritime torts. Cf. *Barr* v. *Matteo*, 355 U. S. 171.[5]

*Vacated and remanded.*

MR. JUSTICE HARLAN, whom MR. JUSTICE FRANK-FURTER joins, dissenting.

I dissent from the Court's disposition of this case on the following grounds:

*First.* For reasons elaborated in my Brother STEWART's dissenting opinion, there is no reasonable basis for concluding that the Court of Appeals' disposition of the negligence cause of action did not rest upon state substantive law, which in maritime wrongful death actions controls, *The Tungus* v. *Skovgaard*, 358 U. S. 588, if, as I expressed in my dissenting opinion in *Hess* v. *United States, ante,* p. 322, it does not impose duties greater than those created by maritime substantive law.

In any event, there being no suggestion that the state standards of duty differ in any way from those obtaining under maritime law, the remand of the negligence cause

---

[5] THE CHIEF JUSTICE, MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS and MR. JUSTICE BRENNAN join this opinion, but solely under compulsion of the Court's ruling in *The Tungus* v. *Skovgaard*, 358 U. S. 588. They believe that as long as the view of the law represented by that ruling prevails in the Court, it should be applied evenhandedly, despite the contrary views of some of those originally joining it that state law is the measure of recovery when it helps the defendant, as in *The Tungus*, and is not the measure of recovery when it militates against the defendant, as in *Hess* v. *United States, ante,* p. 314. However, they note their continued disagreement with the ruling in *The Tungus*, and reserve their position as to whether it should be overruled, particularly in the light of the controversy application of it has engendered among its original subscribers. See the various separate opinions in this case and in *Hess* v. *United States, supra.*

of action to the Court of Appeals seems to me to be a needless and therefore wasteful procedure.

*Second.* As to the unseaworthiness cause of action, no one suggests that West Virginia has such a doctrine of its own. The Court of Appeals deliberately decided (256 F. 2d, at 454) that it need not reach the difficult question of whether the West Virginia Wrongful Death Statute embraced a cause of action for unseaworthiness based on federal concepts, because it found that in any event, under federal law, the vessel was not unseaworthy, and that the petitioner was not one to whom the duty to provide a seaworthy ship was owing.

In resting its decision on these grounds the Court of Appeals exercised the traditional discretion of any court to choose what appears to it a narrower and clearer ground of decision in preference to a broader and more controverted one. The Court does not suggest that the limits of this discretion were exceeded in this instance. Cf. *Barr* v. *Matteo*, 355 U. S. 171. In my view we cannot properly require the Court of Appeals to decide a question which it intentionally and sensibly left open unless we first reverse that court on the issues which it did decide. This the Court does not do. Hence, I believe there is no justification for remanding the case on this score.

Mr. Justice Whittaker, dissenting.

I am persuaded that the Court of Appeals has made sufficiently clear that it thought this diversity, admiralty, death case was governed by the general maritime law, as *remedially* supplemented by the West Virginia Wrongful Death statute, and properly decided it on that basis.

The Court's opinion says that *The Tungus* v. *Skovgaard,* 358 U. S. 588, "decided that it was a question of state law as to what is the proper substantive law to be applied to maritime torts within the territorial jurisdiction of the States in wrongful death cases [and that]

[u]nder this holding, in a maritime tort death case, the State might apply the substantive law generally applicable to wrongful death cases within its territory, or it might choose to incorporate the general maritime law's concepts of unseaworthiness or negligence." I do not understand the *Tungus* case to so hold, and if such a holding was intended by its author or by any of the Justices who joined it, it does not say so.

It seems to me that the substantive legal rights and liabilities involved in this admiralty case are not in any true sense governed by West Virginia law, but rather, are within the full reach of exclusive admiralty jurisdiction and are to be measured by the standards of the general maritime law, *Kermarec* v. *Compagnie Generale Transatlantique,* 358 U. S. 625, 628, as *remedially* supplemented by the West Virginia Wrongful Death statute. See *The Tungus, supra,* at 592.

Although state Wrongful Death statutes are not ones of survivorship and are generally spoken of as creating a *new* cause of action for death, it seems rather clear that the West Virginia Wrongful Death statute, like most others, creates a cause of action only in the sense of providing a *remedy* for death resulting from an act made wrongful by other laws—whether common, statutory or maritime laws—which would have redressed the wrong "if death had not ensued." W. Va. Code, 1955, § 5474 (5). And when, in a case encompassed by the terms of the State's Wrongful Death statute, admiralty "adopts" such statute, it does so only to afford a *remedy* for a substantive cause of action created by the maritime law which, "if death had not ensued," would have redressed it.

It is true that when admiralty "adopts" a State's Wrongful Death statute "it must enforce [it] as an integrated whole, with whatever conditions and limitations the creating State has attached." *The Tungus, supra,* at

592. But the West Virginia Wrongful Death statute, like most such state statutes, apart from prescribing who may prosecute the action, the time within which it must be brought, and the measure and limit of recovery, has attached only the condition that the wrongful "act, neglect or default, [be] such as would . . . have entitled the party injured to maintain an action to recover damages in respect thereof [if death had not ensued]." W. Va. Code, 1955, § 5474 (5). Surely this means that the act, neglect or default, must be such as would, *under other laws*— whether common, statutory, or maritime laws—have entitled the party injured to recover damages in respect thereof "if death had not ensued."

Adoption by admiralty of such a remedial statute cannot be permitted to, and does not, so expand the essential purposes and characteristic features of the general maritime law as to interfere with its proper nation-wide harmony and uniformity, *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, 242. By such adoption, admiralty takes over only the remedy afforded for death by the State's Wrongful Death statute—albeit the whole thereof. It does not thereby abandon the nonconflicting substantive admiralty law which gave rise to the right of action that it would have enforced "if death had not ensued." In such a case; the real and substantive right in suit is still the one created by, and— to the extent not conflicting with the adopted State Wrongful Death statute—is governed by, the maritime law.

This is what I understood the *Tungus* case to mean when I joined it, and re-examination of it confirms that conclusion. I submit there is not a word in it to the contrary. And this conclusion is buttressed by the separate opinion of my Brother BRENNAN in that case. Although this Court has many times and uniformly held

that the maritime law creates no cause of action for wrongful death, and that, in circumstances like these, admiralty "adopts" the State's Wrongful Death Act, the separate opinion in *Tungus* said, in effect, that admiralty would merely look to see whether the State had enacted a wrongful death statute and, if it had, would not "adopt" that act but would put it aside and fashion its own remedy for wrongful death, 358 U. S., at 608–609, which, I thought and still think, is contrary to this Court's cases holding that the maritime law does not create a cause of action for wrongful death and that, in actions for wrongful death arising on the territorial waters of a State, admiralty "adopts" the State's Wrongful Death Act *cum onere*.

I believe that the opinion of the Court of Appeals makes reasonably clear that the court regarded this case as governed by, and that it applied, the general maritime law as remedially supplemented by the West Virginia Wrongful Death statute. I also believe that the court correctly concluded that the maritime doctrine of unseaworthiness was not applicable, and that respondent was not guilty of negligence causing or contributing to cause the death of petitioner's decedent, because, as it found, the barge was both withdrawn from navigation for extensive repairs and completely out of respondent's control—points we thoroughly explored and decided only the other day. *West* v. *United States, ante,* p. 118. I would affirm.

MR. JUSTICE STEWART, dissenting.

I.

In this wrongful death action it was incumbent upon the Court of Appeals to apply the substantive law of West Virginia. The Court today finds it "highly doubtful" whether the Court of Appeals did so. I entertain no such doubt for the following reasons: (1) This Court's

"intervening decision"[1] in *The Tungus* v. *Skovgaard,* 358 U. S. 588, announced no new principle, but simply restated a doctrine well established in this Court. (2) Long before the decision in *The Tungus,* this doctrine had been specifically recognized as the law in the Fourth Circuit. (3) The express language of the Court of Appeals' opinion in the present case makes clear that the court understood that its function was to apply West Virginia law, and that it did so.

Our decision in *The Tungus* simply reaffirmed a principle articulated in many decisions of this Court. This principle, compendiously stated, is that admiralty enforces "the *obligatio*" created by a state wrongful death action "as it would one originating in any foreign jurisdiction." *Levinson* v. *Deupree,* 345 U. S. 648, 652. See *The Harrisburg,* 119 U. S. 199; *The Hamilton,* 207 U. S. 398; *La Bourgogne,* 210 U. S. 95; *Western Fuel Co.* v. *Garcia,* 257 U. S. 233.[2] Under this weight of authority, it could be presumed that the Court of Appeals for the Fourth Circuit would recognize, as other federal courts

---

[1] The judgment of the Court of Appeals in the present case was entered May 27, 1958. The decision of this Court in *The Tungus* was announced February 24, 1959.

[2] The law took a different turn with respect to state workmen's compensation laws. See *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205. Such legislation was differentiated from state wrongful death statutes because of the greater burden imposed on shipowners by "heavy penalties and onerous conditions" of the compensation statutes, and because of the "novel remedies incapable of enforcement by an admiralty court." *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 166. More than 15 years ago this Court pointed out that "[T]he *Jensen* case has already been severely limited, and has no vitality beyond that which may continue as to state workmen's compensation laws." *Standard Dredging Co.* v. *Murphy,* 319 U. S. 306, 309. Cf. *Davis* v. *Department of Labor,* 317 U. S. 249; *Hahn* v. *Ross Island Sand & Gravel Co.,* 358 U. S. 272.

have recognized whenever the specific question has arisen, that the right to recover for wrongful death occurring on the navigable waters of a State is to be determined by reference to state law.[3]

But there is no need to indulge in such a presumption, because the Court of Appeals for the Fourth Circuit, several years before the present case was decided, manifested a thorough understanding of the controlling doctrine exactly in accord with the principles confirmed by this Court last Term in *The Tungus*. In *Continental Casualty Co.* v. *The Benny Skou*, 200 F. 2d 246 (C. A. 4th Cir. 1952), a suit to recover for a death occurring on board a ship in the territorial waters of Virginia, the court held that the action was barred by the one-year limitation contained in the Virginia Wrongful Death Act. The court's reasoning was unambiguous: "The right of action which appellant has sought to enforce is one created solely by the Virginia statute. . . . 'Virginia has bestowed upon admiralty a right to grant a recovery not previously possessed by admiralty. The endowment must be taken *cum onere.*' As appellant grounds his action upon the Virginia statute, he is obliged to accept the statute in its entirety as construed by the Virginia court of last resort." 200 F. 2d, at 250.

Even if the Court of Appeals for the Fourth Circuit had not previously expressed such a clear understanding that cases like these are controlled by the substantive law of the State, I think that its opinion in the present case, standing alone, unambiguously shows a recognition of the duty to apply the substantive law of West Virginia.

---

[3] See, *e. g., Turner* v. *Wilson Line of Massachusetts*, 242 F. 2d 414 (C. A. 1st Cir.); *Halecki* v. *United Pilots Assn.*, 251 F. 2d 708 (C. A. 2d Cir.), judgment vacated and cause remanded, 358 U. S. 613; *Curtis* v. *A. Garcia y Cia.*, 241 F. 2d 30 (C. A. 3d Cir.); *Graham* v. *A. Lusi, Ltd.*, 206 F. 2d 223 (C. A. 5th Cir.); *Lee* v. *Pure Oil Co.*, 218 F. 2d 711 (C. A. 6th Cir.).

What the court said seems to me quite clear: "The maritime law does not allow recovery for wrongful death. . . . The right to maintain such a suit can be enforced in admiralty only in accordance with the substantive law of the state whose statute is being adopted. The endowment must be taken *cum onere*." 256 F. 2d, at 453. This Court's suggestion that the above language was confined to the issue of the monetary limitation upon damages in the West Virginia statute is to me entirely unconvincing, because the Court of Appeals never reached the question of damages.

## II.

Even if I were able to agree that it is uncertain whether the Court of Appeals decided this case under standards of state or federal law, I still could not join in the Court's judgment. For even if the Court of Appeals mistakenly applied substantive standards of federal maritime law, no purpose could be served by remanding this case unless it were shown that the state law is somehow more favorable to the petitioner. But there has been no showing— nor any suggestion—that the law of West Virginia is in any way more favorable to plaintiffs than the general maritime law.[4]  Contrast *Hess* v. *United States, ante,* p. 314.

A remand of this case is equally pointless on the issue of whether, as a matter of West Virginia law, the state death statute incorporates the maritime duty of providing a seaworthy vessel. The district judge found that the barge was unseaworthy, but went on to hold that "this case is not one for the applicability of the doctrine

---

[4] Indeed the case was submitted to us upon the *contrary* assumption. The petitioner's argument was pitched upon his contention that we should overrule *The Harrisburg,* 119 U. S. 199, so that his rights could be determined under *federal* law. The respondent relied upon West Virginia decisions in urging affirmance.

of liability without fault." The Court of Appeals expressly refrained from deciding whether the West Virginia Wrongful Death statute has imported the maritime concept of unseaworthiness, finding that the circumstances of this case were not such as to impose liability under that concept, even if incorporated in the state statute. The court found as a fact that the barge was not unseaworthy, and held as a matter of law that in any event there could be no warranty of seaworthiness with respect to a vessel withdrawn from navigation and delivered into the sole custody and control of a dry dock company for the purpose of major repairs. Only last month we unanimously held that this view of the scope of unseaworthiness liability is correct. *West* v. *United States, ante,* p. 118. There is no point in requiring the Court of Appeals to make what would therefore be so completely irrelevant an inquiry into an elusive question of state law.

I would affirm.