UNION CARBIDE CORPORATION, a corporation, Defendant and Third Party Plaintiff below, Appellant and Cross-Appellee,

v.

Ellen GOETT, As Administratrix of the Estate of Marvin Paul Goett, deceased, Plaintiff below, Appellee and Cross-Appellant,

v.

AMHERST BARGE COMPANY, a corporation, Third Party Defendant below, Appellee.

No. 7588.

United States Court of Appeals
Fourth Circuit.

Argued March 28, 1960.

Decided April 19, 1960.

Harvey Goldstein, New York City (Ernest Franklin Pauley, Charleston, W. Va., and S. Eldridge Sampliner, Cleveland, Ohio, on brief), for Ellen Goett, as administratrix etc., appellee and cross-appellant.

Charles M. Love, Charleston, W. Va. (Charles R. McElwee, Charleston, W. Va., on brief), for Union Carbide Corp., appellant and cross-appellee.

David D. Johnson, Charleston, W. Va., (Jackson, Kelly, Holt & O'Farrell, and W. T. O'Farrell, Charleston, W. Va., on brief), for Amherst Barge Co., appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and THOMSEN, District Judge.

THOMSEN, District Judge.

The Supreme Court has remanded this case, Goett v. Union Carbide Corp., 361 U.S. 340, 80 S.Ct. 357, 359, 4 L.Ed.2d 341, so that this court may determine three questions, stated by the Supreme Court as follows:

"(a) Whether the West Virginia Wrongful Death Act, as to this maritime tort, employs the West Virginia or the general maritime law concept of negligence; and, in the light of its determination, (b) whether the district judge's finding as to negligence is correct under the proper substantive law. To facilitate our discretionary review of the Court of Appeals' findings as to unseaworthiness, it should also determine whether the West Virginia Act incorporates this standard of the general maritime law in death actions involving maritime torts."

The facts are fully stated in the original opinion of this court, 4 Cir., 256 F. 2d 449, and are summarized in the opinion of the Supreme Court.

### A.

The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed. 524, and United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct 517, 3 L.Ed.2d 541, as interpreted by a majority of the Supreme Court in Goett and in Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305, 345, held that "in an action for wrongful death in state territorial waters the conduct said to give rise to liability is to be measured not under admiralty's standards * * * but under the substantive standards of the state law." 361 U.S. at page 319, 80 S. Ct. at page 345. "Under this holding, in a maritime tort death case, the State might apply the substantive law generally applicable to wrongful death cases within its territory, or it might choose to incorporate the general maritime law's concepts of unseaworthiness or negligence." 361 U.S. at page 342, 80 S.Ct. at page 358.

In his dissents in Hess and Goett, 361 U.S. 339, 80 S.Ct. 356 and 361 U.S. 344, 80 S.Ct. 359, Mr. Justice

Whittaker, who was one of the majority of five in Skovgaard and Halecki, has stated that he does not interpret Skovgaard in the manner quoted above, and has indicated that he believes such cases are governed by "the general federal maritime law as remedially supplemented by the State's Wrongful Death Act". This brings him close to the position of the four justices who dissented in Skovgaard and Halecki and concurred "under compulsion" in Hess and Goett. It is not for us to resolve this problem; and in the view we take of the law it would make no difference in our answer to question (b) whether we follow the rule stated in the "opinion of the Court" in Hess and in Goett or the rule suggested by Mr. Justice Whittaker in his dissents.

There is no West Virginia case in point, although the Supreme Court of West Virginia has held that its Wrongful Death Act should be liberally construed. Richards v. Riverside Iron Works, 56 W.Va. 510, 49 S.E. 437. We have considered the arguments on both sides so well developed in the majority and minority opinions of the Second Circuit in Halecki v. United New York & New Jersey Sandy Hook Pilots Ass'n, 251 F.2d 708, and of the Third Circuit in Skovgaard v. The Tungus, 252 F.2d 14, which construed a statute essentially similar to the West Virginia Act. See also Holley v. The S. S. Manfred Stansfield, 4 Cir., 269 F.2d 317, and State of Maryland for Use of Smith v. A/S Nabella, D.C.D.Md., 176 F.Supp. 668, noting that the construction of the Virginia and Maryland Acts was aided by comparatively recent amendments to those Acts, giving the right to proceed in rem against a ship. There is no such provision in the West Virginia Act; that is an element to be considered, but it is not conclusive, since this is not an action in rem.

■ The West Virginia statute, Code, 54–7–5 et seq., like most wrongful death statutes, provides basically that if death is caused by an act, neglect or default which would have entitled the injured party to maintain an action if he had lived, then the person who would have been liable for the injury will be liable under the statute for the death. If Goett had survived he could have brought an action against Union Carbide in the West Virginia courts for the alleged negligence and unseaworthiness, and his right to recover in such an action would have been governed by general maritime law. It is true that such an action based on unseaworthiness was not recognized in 1863, when the West Virginia Wrongful Death Act was adopted, and that the principles presently controlling the negligence aspect of such an action had not been fully developed. We find, however, that the West Virginia legislature, in adopting the Wrongful Death Act, did not intend to limit recovery thereunder to actions based on the wrongful acts, neglects and defaults with which the legislators who adopted it were familiar, but that the statute was intended to cover all wrongful acts, neglects and defaults which from time to time would entitle an injured party to maintain an action under the applicable substantive law, whether the common law, statutory law or maritime law. The West Virginia courts apply all three, in appropriate cases.

■ We conclude that in a maritime tort death case West Virginia would "choose to incorporate the general maritime law's concepts of unseaworthiness or negligence". [361 U.S. 340, 80 S.Ct. 357.]

■■ Counsel for Union Carbide argues that such a construction of the West Virginia Act violates the separation of powers doctrine, that a state legislature "cannot delegate its law-making power to another branch of government, whether judicial or legislative." We have found no authority supporting Union Carbide's argument. No delegation of law-making power is involved. The separation of powers doctrine does not require that the Wrongful Death Act be frozen so that it cannot respond to the development of the common law, as in-

terpreted by West Virginia courts, or to the development of the maritime law.

### B.

Although we have concluded that the Supreme Court of West Virginia would apply maritime law concepts of negligence in such a case as this, we do not believe that it would run ahead of the federal courts and create duties not heretofore recognized or enforced by the Supreme Court of the United States or by the weight of other federal authority, and not applied by West Virginia courts in analogous situations.

In our former opinion in this case we said [256 F.2d 455]: "Nor was Carbide negligent in delivering the barge to Amherst without mounting life rings or other safety equipment on the barge, or in failing to rescue Goett after he fell into the river, as contended by his administratrix. There is, of course, a duty on a vessel and her owners to have life saving equipment available to rescue members of her crew who fall overboard while the vessel is in operation. Sadler v. Pennsylvania R. Co., 4 Cir., 159 F.2d 784, and cases cited. A similar duty is owed to business visitors who come aboard while the vessel is in the custody and control of her * * * owners. But in the instant case Carbide had delivered the barge into the sole custody and control of Amherst. Carbide's duty under those circumstances was to warn Amherst and its employees of any hidden danger or latent defect * * * in the barge. It was the duty of Amherst to supply its employees with a reasonably safe place in which to work. It knew and controlled the conditions of the work and the equipment which would be used. It was Amherst's responsibility to decide whether a temporary railing or stanchion should be erected, whether its men should be required to wear preservers, and whether and where life rings and other rescue equipment should be mounted. For negligence in any of these respects it would be liable to plaintiff herein for damages, were it not for the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950. But Carbide is not liable to plaintiff for negligence; it breached no duty it owed to Goett. Lester v. United States, [2 Cir., 234 F.2d 625, certiorari denied 352 U.S. 889, 77 S.Ct. 130, 1 L.Ed.2d 85]; West v. United States [D.C.E.D.Pa., 143 F.Supp. 473]; Raidy v. United States [D.C.D.Md., 153 F.Supp. 777, affirmed 4 Cir., 252 F.2d 117]; 38 Am.Jur., Negligence, sec. 97; Restatement, Torts, §§ 340, 343; Harper and James, The Law of Torts, vol. 2, sec. 21.1."

Since our opinion in this case was written West has been affirmed by the Third Circuit, 256 F.2d 671, and by the Supreme Court, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161, emphasizing the importance of control of the vessel at the time of the injury as the decisive factor on both aspects of the case, negligence and unseaworthiness. See also, Halecki, supra, Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550, and Lawlor v. Socony-Vacuum Oil Co., 2 Cir., 275 F.2d 599, in all of which the vessel was in the control of the owner. The owner was also in general control of the vessel in all the stevedore and other cases cited by libelant. We adhere to our previous opinion on this point as a proper application of the general maritime laws' concept of negligence. It is also in line with the principles applied by West Virginia courts in analogous situations. Sesler v. Rolfe Coal & Coke Co., 51 W. Va. 318, 41 S.E. 216. Cf. Roberts v. Kelly Axe & Tool Co., 107 W.Va. 236, 148 S.E. 70, where the owner was in control of the premises. See also Trimyer v. Norfolk Tallow Co., 192 Va. 776, 66 S.E.2d 441.

### C.

As stated above, we believe the West Virginia Act incorporates the general maritime law of unseaworthiness in death actions involving maritime torts. Our previous findings that Goett was not a person to whom the warranty of seaworthiness ran, and that the barge was not unseaworthy, is supported by the

323

decision of the Supreme Court in West, supra. See also Lawlor, supra.

We adhere to our decision that judgment should have been rendered in favor of the defendant.