CIRCLE LINE SIGHTSEEING YACHTS, INC., Petitioner-Appellee,

v.

Mary E. STORBECK, Claimant-Appellant,

and

The City of New York, Claimant-Appellee.

No. 118, Docket 28205.

United States Court of Appeals Second Circuit.

Argued Oct. 30, 1963.

Decided Dec. 3, 1963.

Walter L. Hopkins, of Pyne, Smith & Wilson, New York City (Warner Pyne, William A. Wilson, and Anthony M. O'Donnell, of Pyne, Smith & Wilson, New York City, on the brief), for petitioner-appellee.

Nathaniel A. Kahn, Mineola, N. Y. (Abraham Brinn, Mineola, N. Y., on the brief), for claimant-appellant.

Edward J. McLaughlin, New York City (Leo A. Larkin, Corp. Counsel of the City of New York, and Seymour B. Quel, New York City, on the brief), for claimant-appellee.

Before SWAN, CLARK, and MARSHALL, Circuit Judges.

CLARK, Circuit Judge.

Anna Lee McMahon died as the result of injuries sustained in the tragic collision on September 6, 1956, of Circle Line's M. V. "Sightseer VIII" with the Madison Avenue Bridge over the Harlem River, in which Circle Line and the City of New York were held mutually at fault. See Circle Line Sightseeing Yachts, Inc. v. City of New York, 2 Cir., 283 F.2d 811, cert. denied 365 U.S. 879, 81 S.Ct. 1030, 6 L.Ed.2d 191. As a passenger and without fault on her part she sustained injuries from which she died on September 14, 1956. Her only child, Mary E. Storbeck, as administratrix, filed a claim on behalf of her estate. A hearing to ascertain damages was held before Daniel H. Greenberg, Special Commissioner. He recommended that Mrs. McMahon's estate be allowed $10,000 for her personal injuries, pain and suffering, $1,820.50 for medical and funeral expenses, and $21,770 for the pecuniary loss to Mrs. Storbeck in accordance with the principles of the New York wrongful death act. N.Y. Decedent Estate Law, McKinney's Consol.Laws, c. 13, §§ 130–134. He further recommended that interest be allowed at 6% from the date of Mrs. McMahon's death, September 14, 1956, to the date of the filing of his report, November 15, 1961, on the special damages and pecuniary loss resulting from wrongful death.

Judge Dimock granted the recommended $10,000 award for personal injuries, pain and suffering, with interest thereon at 4% from November 15, 1961, the date the Commissioner's report was filed, and the recommended award of $1,820.50 for medical and funeral expenses, with interest thereon at 4% running from September 14, 1956, the date of Mrs. McMahon's death. But he rejected the recommended award for pecuniary losses. Appellant complains both of Judge Dimock's disallowance of the award for pecuniary losses and of his assessing interest at only 4% against Circle Line on the damages awarded for wrongful death.

Mrs. McMahon lived with Mr. and Mrs. Storbeck and their three children. She was not employed outside their home, but contributed $80 a month to the family budget from her savings of over $20,000. In addition, a healthy and active woman of only 56, she contributed her services and companionship and acted as a baby sitter. Indeed, at the time of her injury, she was taking her 7½-year-old grandson on a sightseeing trip. It is clear that Mrs. Storbeck is entitled to recover for the loss of her mother's assistance, provided she shows with sufficient definiteness that her losses were "pecuniary." Gross v. Abraham, 306 N.Y. 525, 119 N.E.2d 370. Cf. First Nat. Bank in Greenwich v. National Airlines, Inc., 2 Cir., 288 F.2d 621.

Commissioner Greenberg computed Mrs. Storbeck's pecuniary loss by multiplying her mother's approximate annual

cash contribution times her life expectancy. Judge Dimock understood this to mean that he was making "no award whatsoever for anything other than the actual cash contribution made by the decedent," stating that "the Commissioner did not recommend any allowance for any lost services and I find no basis for departing from his presumptively correct determination."

We do not so read Commissioner Greenberg's report. He pointed out that in addition to her cash contributions Mrs. McMahon contributed services and acted as a baby sitter, "thus, doing all the things a grandmother does." No one who has raised children or sought domestic help would question the real and significant value of such services, or the fact that the pecuniary loss involved in the death of this helpful grandmother was a substantial one. The difficulty here arises because, though Commissioner Greenberg found that claimant had "satisfactorily established by specific evidence" pecuniary loss of support, even under the strict test of First Nat. Bank in Greenwich v. National Airlines, Inc., supra, 2 Cir., 288 F.2d 621, yet he did not adequately develop the evidence in the record or in his report.

■ Although it could be argued that the Commissioner capitalized the decedent's cash contribution on finding that the value of her services was sufficient to compensate the Storbecks for the expense of her maintenance and that the cash contribution was thus pure profit, yet he did not make a finding to that effect and Judge Dimock was justified in refusing to speculate on the matter. But the judge's reasoning that the cash contributions could not be considered a pecuniary loss, since Mrs. Storbeck inherited the savings from which they were made, is clearly erroneous. Under New York law, benefits received as heir of the decedent cannot be considered in determining pecuniary loss or used as a setoff against the amount determined. Closson v. Griffith, 219 App.Div. 163, 218 N.Y.S. 517, aff'd 245 N.Y. 552, 157 N.E. 854. Since

the facts in the record show that the claimant clearly suffered some pecuniary loss, we believe the proper course is to remand the issue so that the Commissioner may make specific findings as to the nature of Mrs. McMahon's services, their value, and the amount that they should be offset by the expenses of her maintenance. If the value of her services and the expenses of her maintenance are offsetting, then Mrs. Storbeck is entitled to an award based on the $80 per month which Mrs. McMahon regularly contributed.

■ Turning now to the question of interest, it appears that under the New York wrongful death provisions in force at the time of this accident, N.Y. Decedent Estate Law § 132, added L.1920, c. 919, § 1; amended L.1935, c. 224; L. 1949, c. 638, § 2, interest on the award made from the time of decedent's death was included in the judgment, as is true under the present law. See The Linseed King, D.C.S.D.N.Y., 48 F.2d 311, 320, aff'd In re Spencer Kellogg & Sons, 2 Cir., 52 F.2d 129, rev'd on other grounds, Spencer Kellogg & Sons v. Hicks, 285 U. S. 502, 52 S.Ct. 450, 76 L.Ed. 903. Although the statute does not specify the amount, it is settled New York law that interest provided by a statute is to be assessed at the legal rate of 6%, N.Y. General Business Law, McKinney's Consol.Laws, c. 20 § 370, where the statute does not specifically prescribe another rate. See NYCPLR § 5004, codifying the existing law. Recovery of interest against New York City in wrongful death actions is limited to 4%. N.Y. General Municipal Law, McKinney's Consol.Laws, c. 24, § 3–a.

■■ The issue presented is whether Judge Dimock had discretion also to limit to 4% the interest on the sums recovered for wrongful death awarded against Circle Line. We hold that he did not. A judge has broad discretion in awarding interest in traditional admiralty actions, Todd Shipyards Corp. v. Moran Towing & Transp. Co., 2 Cir., 247 F.

2d 626; Geotechnical Corp. of Del. v. Pure Oil Co., 5 Cir., 214 F.2d 476. But here we deal with prejudgment interest statutorily set as an integral element of the damages to be given in a wrongful death action. See, e. g., Alfieri v. Cabot Corp., 17 A.D.2d 455, 235 N.Y.S.2d 753. Further, the question of prejudgment interest is considered by New York courts to be one of substantive law. Davenport v. Webb, 11 N.Y.2d 392, 230 N.Y.S.2d 17, 183 N.E.2d 902. The general policy with regard to the enforcement of state wrongful provisions of federal admiralty courts was adumbrated by Justice Stewart in The Tungus v. Skovgaard, 358 U. S. 588, 592, 79 S.Ct. 503, 506, 3 L.Ed.2d 524, 71 A.L.R.2d 1280: "The decisions of this Court long ago established that when admiralty adopts a State's right of action for wrongful death, it must enforce the right as an integrated whole, with whatever conditions and limitations the creating State has attached." See United New York and New Jersey Sandy Hook Pilots Asso. v. Halecki, 358 U.S. 613, 615, 79 S.Ct. 517, 3 L.Ed.2d 541; Goett v. Union Carbide Corp., 361 U.S. 340, 80 S.Ct. 357, 4 L.Ed.2d 341.

██ Whatever the power of a federal court to refuse to enforce provisions "offensive to traditional principles of maritime law," Hess v. United States, 361 U.S. 314, 320, 80 S.Ct. 341, 346, 4 L. Ed.2d 305, clearly it does not have discretion to reduce the prejudgment interest in derogation of an enlightened provision of the New York statute. Frasier v. Public Service Interstate Transp. Co., 2 Cir., 254 F.2d 132, 68 A.L.R.2d 1333. The fact that interest against New York City, which was mutually at fault, is limited by statute to 4% gives Circle Line no ground for complaint. Although considerations of justice require that damages be divided when two parties are mutually at fault, Circle Line Sightseeing Yachts, Inc. v. City of New York, supra, 2 Cir., 283 F.2d 811, cert. denied 365 U.S. 879, 81 S.Ct. 1030, 6 L.Ed.2d 191, they do not require, once the division is made, that a private corporation be given the benefit of statutes specifically designed to limit only recovery against municipalities.

The judgment is reversed and the action is remanded for further proceedings in accordance with this opinion.