Bobby L. VAN HORN, Plaintiff,

v.

GULF ATLANTIC TOWING CORPORA-
TION, Defendant and Third-Party
Plaintiff,

v.

COLONNA'S SHIPYARD, INCORPO-
RATED, Third-Party Defendant.

Civ. A. No. 5668.

United States District Court
E. D. Virginia,
Norfolk Division.

Jan. 9, 1967.

Howell, Anninos & Daugherty, Henry E. Howell, Jr., Norfolk, Va., for plaintiff.

Jett, Sykes & Berkley, Roy L. Sykes, Norfolk, Va., for defendant and third-party plaintiff.

Seawell, McCoy, Winston & Dalton, Robert M. Hughes, III, Norfolk, Va., for third-party defendant.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

The matter stands on a motion for summary judgment filed by Gulf Atlantic Towing Corporation (hereinafter referred to as Gatco). Treating the facts, with all proper inferences to be drawn therefrom, favorably to the plaintiff, we nevertheless find that this case is controlled by Union Carbide Corporation v. Goett, 4 Cir., 256 F.2d 449, vacated and remanded on other grounds, 361 U.S. 340, 80 S.Ct. 357, 4 L.Ed.2d 341 decided on remand, 4 Cir., 278 F.2d 319, cert. den. 364 U.S. 826, 81 S.Ct. 64, 5 L.Ed.2d 55.

Gatco was the owner of an unmanned steel barge bearing the name BIMBO. Between February 2, 1966 and February 10, 1966, Gatco negotiated a contract with Colonna's Shipyard, Incorporated (hereinafter called Colonna or Shipyard) for certain repairs and renewals to the barge; including the replacement of damaged plates, painting the bottom and sides to the light load line, sandblasting, painting the anchor, etc. The barge was delivered to Colonna on February 10, 1966. As the barge was unmanned, it had no crew; however, no tug crew members remained in the area after the delivery of the barge.

While the barge was still in the water at approximately 8:00 A.M. on February 11, 1966, plaintiff, an employee of the Shipyard, was attempting to move a pump aboard the BIMBO for the purpose of pumping the barge when he slipped on a residue of grain on the deck. Plaintiff admits having seen the grain residue on the deck when he went aboard the barge on the morning in question. His instructions to pump the barge emanated from his employer, Colonna. For the purpose of this motion we assume that the grain residue made the deck slippery and that this was the condition of the barge when delivered to Colonna by Gatco. We likewise assume that pumping a barge or vessel falls within the traditional work of a seaman.

Later during the morning of February 11, 1966 (but following plaintiff's injury), the barge was hauled ashore on Colonna's marine railway, where it remained for the next fourteen days while undergoing bottom repairs.

All actual repair work was performed by Colonna's employees. It is true that Kenny, the local manager for Gatco, visited the Shipyard from time to time during the repair period and consulted with Colonna's superintendent, Friedenberger, as to the progress of the work, including any additional work that might seem to be indicated. While plaintiff states that Gatco retained supervision and control over the barge while at the Shipyard, this generalized conclusion resolves itself into three assertions, namely, (1) he overheard Kenny tell Friedenberger not to let Colonna's men waste so much time pumping out the barge as it was costing Gatco money, (2) Kenny marked with chalk some of the plates he wanted removed, and (3) Gatco had the power to remove the barge from the Shipyard at any time. We do not believe that these facts—admitting them to be true—amount to any exercise of "control" by Gatco as they merely evidence the general power of supervision which the owner of any vessel has while the vessel is undergoing repairs. There is no contention that Gatco gave any orders to Colonna's employees and the uncontroverted fact is that Colonna was in charge of the job.

■ From the standpoint of the warranty of seaworthiness, assuming that plaintiff was doing the traditional work of a seaman, the test is whether the barge was, at the time of injury, temporarily withdrawn from navigation. Allied with this issue, but more pertinent in considering the allegation of negligence, is whether Colonna took exclusive control of the barge on February 10, 1966. We think that under *Goett*, the barge was temporarily withdrawn from navigation. In *Goett*, the death occurred while the barge was still afloat in the water, but the Court of Appeals for the Fourth Circuit nevertheless held that the barge had been "temporarily withdrawn from navigation". The fact that *Goett*[1] was vacated and remanded on other grounds does not vitiate the binding effect of the legal principles enunciated in the initial opinion. Indeed, following remand the Court of Appeals restated its former position on the issues of unseaworthiness, negligence, exclusive control, temporary withdrawal of the barge from navigation, etc. See: 278 F.2d 319, 322.

■ We cannot agree with plaintiff that, merely because he may have been engaged in work traditionally done by seamen (pumping the barge), imposes liability for either unseaworthiness or negligence. Aside from *Goett*, the case of West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 appears to be dispositive of this question. It is the status of the ship which controls; not the specific type work being done on shipboard at the moment of the injury.

■ In considering whether this barge had been "temporarily withdrawn from navigation", we are not unmindful of the fact that the barge was still afloat. Such was the situation in *Goett*. However it is uncontradicted that the barge was to be placed on a marine railway for the purpose of renewing her bottom plates. These repairs could not be done by a crew of any tug and it necessitated placing the barge on a railway with special facilities and equipment. Plaintiff argues that Gatco maintained a marine railway at Jacksonville, Florida, and that the barge was sufficiently seaworthy to withstand a voyage to Florida for the purpose of performing this work. We do not believe that a shipowner, equipped with facilities at a distant point to make such repairs, is required to remove a barge to its own yard many miles away as a prerequisite to relying upon the contention that the barge is "temporarily withdrawn from navigation". We recognize that whether a vessel has been "withdrawn from navigation" is essentially a factual determination, Roper v. United States, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1, but it does not follow that where the facts are not in dispute, all such issues must be presented to a jury, Walker v. United States Gypsum Company, 4 Cir., 1959, 270 F.2d 857, cert. den. 363 U.S. 805, 80 S.Ct. 1240, 4 L.Ed.2d 1148, and cannot properly be presented on summary judgment. To so hold would emasculate Rule 56 permitting such a procedure.

Nor are we impressed by the fact that Gatco's local manager, Kenny, visited the Shipyard to discuss the progress of the work, including the marking of plates he wanted removed. In *West*, a captain, chief mate, second mate, chief engineer, assistant engineer, and steward remained aboard the vessel during repairs, but the Supreme Court held that they had "no control of the ship in the ordinarily accepted context". As to the contention that Gatco had the power to remove the barge from the Shipyard at any time, this, we presume, is an inherent right in the owner of any property. If there is merit to this argument, there could never be a situation in which the control of any property could be relinquished by the owner.

Under the facts here presented we must conclude that the barge was temporarily withdrawn from navigation when it was

---

1. It is interesting to note that the first opinion in *Goett* (256 F.2d 449) is cited with approval in footnote 3 in Roper v. United States, 368 U.S. 20, 24, 82 S.Ct. 5, 7 L.Ed.2d 1 decided after *Goett* had reached its final stages.

delivered to Colonna on February 10, 1966, and remained in that status until it was redelivered to Gatco approximately two weeks later.

The final argument is predicated upon defendant's negligence. Having concluded that the sole custody and control of the barge was in Colonna, the only duty owed by Gatco was to warn Colonna and its employees of any hidden danger or latent defect. Union Carbide Corporation v. Goett, supra. Assuming, as we must, that a residue of grain remained on the deck, this was open and obvious as evidenced by plaintiff's statement that he observed same when he first went aboard the barge on the morning of his injury. It was Colonna's obligation to provide its employees with a reasonably safe place in which to work. Plaintiff's argument that the narrow deckway of the BIMBO, lacking a coaming or rail on its outboard side, made it "inherently dangerous to maneuver pumps for pumping purposes" is without merit as it was obvious to all and, in any event, is answered by *Goett* by its holding that it was the Shipyard's responsibility to determine what constituted a reasonably safe place in which to work. We need not consider whether the narrowness of the deck or absence of a rail constituted a proximate cause of plaintiff's injuries. The language in Nasta v. United States, 2 Cir., 1961, 288 F.2d 186, *does not compel a different conclusion.* The Second Circuit there dealt with the law of New Jersey. Under the law of Virginia the duty of the owner is to give notice or warning to an invitee of an unsafe condition which is known to the owner and is unknown to the invitee; but notice or warning is not required where the dangerous condition is open and obvious to a person who is exercising reasonable care for his own safety, and is required only with respect to latent dangers. Trimyer v. Norfolk Tallow Co., 192 Va. 776, 66 S.E. 2d 441.

An order granting summary judgment will be entered upon presentation.