## GEOTECHNICAL CORP. OF DELAWARE

v.

## PURE OIL CO.

No. 14964.

United States Court of Appeals, Fifth Circuit.

July 6, 1954.

Charles Kohlmeyer, Jr., John May, New Orleans, La., for appellant-appellee.

Francis Emmett, Eberhard P. Deutsch, New Orleans, La., Deutsch, Kerrigan & Stiles, New Orleans, La., for appellee-appellant.

Before HUTCHESON, Chief Judge, and RIVES, Circuit Judge, and DAWKINS, District Judge.

DAWKINS, District Judge.

The Pure Oil Company (libelant) owned the Leo Huff which was formerly a U. S. Navy mine sweeper (type AMC) purchased as surplus property by libelant and converted to a vessel suitable for offshore, underwater geophysical exploration. On December 5, 1947, while being so used by Geotechnical Corporation of Delaware (called Geotech), respondent, she was completely destroyed as the result of an explosion. In prior proceedings, respondent was found liable for her loss (D.C., 94 F.Supp. 866, as affirmed 5 Cir., 196 F.2d 199, certiorari denied 344 U.S. 874, 73 S.Ct. 165, 97 L.Ed. 681.

The case was remanded for the purpose of determining the amount of the loss. The District Judge referred the matter to a Commissioner, who recommended the libelant recover the sum of $46,000.00, with interest at the rate of five per cent from December 5, 1947, the date of the loss, and the costs. The lower court overruled all exceptions, approved the findings of the Commissioner, and both parties have appealed.

Respondent contends (1) that market value of the vessel was the proper basis for recovery, shown by the evidence not to exceed $28,000.00; and (2) that the Commissioner erred in permitting libelant to prove original cost plus the expense of remodeling, without first establishing there was no market value; and (3) in allowing interest at the rate of five per cent from the date of the destruction of the vessel with costs to libelant.

Libelant contends there was no market for vessels of the Leo Huff type at the time of her loss and the value should be based on cost plus the expense of remodeling, less depreciation. This, it asserts, was the sum of $125,000.00. In the alternative, it argues that the value should be the price asked for the only AMC available, plus actual cost of conversion, or, the sum of $75,000.00.

The case was fully tried, argued and briefed by able counsel on both sides before the Commissioner. The latter in a long opinion reviewed all the evidence and authorities in a most thorough and able report covering some 38 pages in the record, answering in detail the contentions of each side, both as to the facts and the law. He attempted to arrive at a figure which a willing owner or seller would have accepted from a willing purchaser who did not have to buy it, which is generally held to be the fair market price, at the time of the loss on December 5, 1947.

The whole matter was reviewed by the court below on exceptions filed by the parties and the Commissioner's report was affirmed without opinion, the court stating: "The Commissioner's findings are not clearly erroneous and they are hereby affirmed", citing Pioneer Import Corp. v. The Lafcomo, 2 Cir., 1947, 159 F.2d 654 and Todd Erie Basin Dry Docks, Inc. v. The Penelopi, 2 Cir., 1945, 148 F.2d 884.

In simple language the contentions here are, by the libelant, the amount allowed for the loss of its vessel was not enough, and by respondent, it was too much. The respondent further contends that the rate of interest was too high and that it should run only from final judgment, on the first appeal.

■ The only issue before the Commissioner on the remand was the value of the vessel when it was destroyed. It would serve no useful purpose to attempt in this opinion a review of the record of more than 400 pages, especially since we agree with the Commissioner's findings which also had the approval of the lower judge. The Commissioner's report contains an exhaustive consideration of all of the facts as well as the law on all points and will remain a part of the record in this case for examination by anyone who may wish to do so.

■ With reference to the question of the rate of interest and the date from which it should run, it may be stated the legal rate in Louisiana is five per cent, Article 2924, LSA–Civil Code, and the date from which it is allowed in admiralty cases has uniformly been

from the date of the loss unless for good reasons it was determined otherwise. See The El Monte, 5 Cir., 252 F. 59, 64 and Galveston Towing Co. v. Cuban S.S. Co., 5 Cir., 195 F. 711. The Commissioner found that the delays were not due to the fault of the libelant, but mainly to the failure of the respondent to timely put the case at issue and the time consumed by it in fruitless appeals and application for review to the United States Supreme Court. While a federal court in a case of this kind is not bound by statutory rates of interest or the date from which it should run, we may consider by analogy the law of the state as the proper basis in fixing interest in a judgment. In the light of all the circumstances, fully set forth in the Commissioner's report, there appears no reason why the libelant, as successful litigant, should not be awarded its costs.

The judgment below is

Affirmed.