GENERAL FACILITIES, INC., a corporation; Continental Oil Company, a corporation; and Continental Pipe Line Company, a corporation, Plaintiffs,

v.

NATIONAL MARINE SERVICE, INCORPORATED, a corporation, Defendant.

No. 80–1433A(B).

United States District Court,
E. D. Missouri, E. D.

May 29, 1981.

James D. Eckhoff, Clayton, Mo., for plaintiffs.

William G. Ohlhausen, St. Louis, Mo., for defendant.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

REGAN, District Judge.

This action came on for trial before the Court, and the Court having heard the evidence and considered the stipulations of the parties, finds the facts and states the conclusions of law as follows:

### Findings of Fact

1. That this is an admiralty or maritime claim within the meaning of 9(h) of the Federal Rules of Civil Procedure and that this Court possesses jurisdiction of both the subject matter and the parties hereto.

2. That plaintiffs, General Facilities, Inc., Continental Oil Company (now known as Conoco, Inc., and hereinafter referred to as such) and Continental Pipe Line Company are and were at all times material hereto corporations duly organized and existing under and by virtue of the laws of the State of Delaware. Each of the said plaintiff corporation's principal place of business is in a state other than the State of Missouri.

3. That defendant, National Marine Service, Incorporated, was at all times material herein a corporation duly organized and existing under and by virtue of law with its principal place of business in St. Louis County, Missouri.

4. That defendant, National Marine Service, Incorporated, was and is at all times material hereto the owner and operator of the National Marine Shipyard located on the Mississippi River at Hartford, Illinois, at or near Mile 197 UMR.

5. That at all times material hereto, General Facilities, Inc. was the owner and lessor of a barge loading and unloading facility, which was leased to Conoco, Inc., as lessee. Said facility is located on the Illinois bank of the Mississippi River, a navigable waterway, at or near Mile 194.9 UMR. Continental Pipe Line Company, which is the owner of a pipeline delivery system, provides supervision and guidance in the operation of said facility and in conjunction with the tankage, truck racks and ancillary on-shore facilities located at Hartford, Illinois, which latter facilities are owned by General Facilities, Inc. and leased by it to Conoco, Inc. Joint Exhibits I through VI inclusive (attached hereto and made a part hereof) represent the general nature and condition of the barge loading and unloading facility prior to the incident which is the subject matter of this action. Joint Exhibit VII (attached hereto and made a part hereof) represents the general nature of the on-shore facilities above-mentioned.

6. That in the early morning hours of May 15, 1979, two barges (RW–239 and ART–412) which were under the exclusive control and care of National Marine Service, Incorporated, broke loose from their moorings at the National Marine Shipyard, drifted down river and struck the subject barge loading and unloading facility.

7. That the subject barge loading and unloading facility was damaged as a result of its being struck by the subject barges.

8. That as a direct and proximate result of the damage to the barge loading and unloading facility caused by the collision of May 15, 1979, plaintiffs expended $53,388.14 in restoring the barge loading and unloading facility to as good a condition as before the damage. The method and costs of repair of said facility were normal for this type of work and reasonable and necessary and accomplished in the most economical manner and in accordance with good engineering practices.

9. That the barge facility was not improved or bettered as a result of the aforesaid repairs.

10. That the barge facility had not been damaged prior to May 15, 1979.

11. That as a direct and proximate result of the damage to the barge facility caused by the collision of May 15, 1979, the barge facility was inoperable from May 15, 1979, the date of the collision, to September 18, 1979, the date repairs were completed and the barge facility was once again operable.

12. That as a direct and proximate result of Conoco, Inc.'s inability to use the barge loading and unloading facility from May 15, 1979 to September 18, 1979, Conoco, Inc. incurred an added expense of $44,-052.32. This added expense is attributed to Conoco, Inc.'s contractual agreement with Clark Oil and Refining Corporation to load for the account of Clark petroleum products across its barge loading and unloading facility. Conoco, Inc. also had a contractual agreement with Amoco Oil Company for loading at Amoco's barge loading and unloading facility petroleum products at a cost to Conoco, Inc. of $.01219 per gallon. Conoco, Inc.'s cost for loading and unloading at its own loading and unloading facility is $.0005 per gallon. The net added expense to Conoco, Inc. for the loading and unloading of petroleum products across Amoco's barge loading and unloading facility is $.01169 per gallon. It was necessary for Conoco, Inc. to load 3,768,377 gallons of petroleum at the Amoco Oil Company dock rather than plaintiffs' dock to satisfy Conoco, Inc.'s contractual commitment to Clark Oil and Refining Company. This represents a net added expense to Conoco, Inc. of $.01169 per gallon or $44,052.32.

13. That the added cost of $44,052.32 was reasonable and necessary.

14. That as a direct and proximate result of Conoco, Inc.'s inability to use the barge loading and unloading facility from May 15, 1979 to September 18, 1979, Conoco, incurred an added expense of $2,395.98. This added expense is attributable to Conoco, Inc.'s contractual commitment to furnish the Apex Oil Company and Marine Petroleum Company with petroleum products. Conoco, Inc. had a contractual agreement with Phillips Petroleum Company for the loading at its barge loading and unloading facility pre-delivered petroleum products for the account of Conoco, Inc. and at a cost to Conoco, Inc. of $.00071 per gallon. The net expense to Conoco, Inc. for the loading of petroleum products across Phillips barge loading and unloading facility of $.00071 per gallon. It was necessary for Conoco, Inc. to predeliver to Phillips Petroleum Company at its East St. Louis dock for loading 3,374,616 gallons of petroleum (292,-692 for Apex Oil Company and 3,081,924 for Marine Petroleum Company). This represents a net added expense of $.00071 per gallon or $2,395.98.

15. That the added cost of $2,395.98 was reasonable and necessary.

16. That as a direct and proximate result of Conoco, Inc.'s inability to use the barge loading and unloading facility from May 15, 1979 to September 18, 1979, it was reasonably foreseeable that Conoco, Inc. would have to use the barge loading and unloading facilities of other companies in order to meet existing contractual commitments to deliver petroleum products.

17. That as a direct and proximate result of Conoco, Inc.'s inability to use the barge facility from May 15, 1979 to September 18, 1979, Conoco, Inc. lost net profits in the amount of $66,000.00.

18. That as a direct and proximate result of Conoco, Inc.'s inability to use the barge loading and unloading facility from May 15, 1979 to September 18, 1979, it was reasonably foreseeable that Conoco, Inc. would suffer a net loss in net profits.

### Conclusions of Law

1. That this matter was timely filed, and the Court has jurisdiction under the admiralty and maritime jurisdiction, Title 28, U.S.C. § 1333.

2. That defendant has admitted liability.

3. That the measure of plaintiffs' damages is the cost of repairing the damaged facility, *Hinfin Realty Corporation v. M/V Poling Bros. No. 7*, 348 F.Supp. 1391

(E.D.N.Y.1972); *Shepard S.S. Company v. United States*, 111 F.2d 110 (2d Cir. 1940); *United States v. Ebinger*, 386 F.2d 557 (2d Cir. 1967); *Demetrius Maritime Company, Ltd. v. S/T "Connecticut"*, 463 F.Supp. 1108 (S.D.N.Y.1979).

4. That plaintiffs are entitled to recover for expenses incurred in using the barge facilities of other companies. *American Oil Company v. M/T Lacon*, 398 F.Supp. 1181 (S.D.Ga.1973); *Cargill, Inc. v. Taylor Towing Service, Inc.*, 483 F.Supp. 1094 (E.D.Mo. 1979).

5. That plaintiffs are entitled to recover for lost profits. *Mid-American Transportation Company, Inc. v. Cargo Carriers, Inc.*, 480 F.2d 1071 (8th Cir. 1973); *Arkansas Valley Dredging Company, Inc. v. Magnolia Marine Transport Company*, 469 F.Supp. 179 (N.D.Miss.1979).

6. That pre-judgment interest awards in admiralty, although lying in the Court's discretion, are awarded in the case of property losses based on tort from the date of loss unless peculiar circumstances exist. *Bunge Corporation v. American Commercial Barge Lines, Inc.*, 630 F.2d 1236 (7th Cir. 1980); *Geotechnical Corp. v. Pure Oil Co.*, 214 F.2d 476, 478 (5th Cir. 1954); *The President Madison*, 91 F.2d 835, 847 (9th Cir. 1937).